No. 13503

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

     Plaintiff and Respondent,

  -vs-

MYRON LARSON,

     Defendant and Appellant.

---

Appeal from:  District Court of the Second Judicial District,
            Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

    Leonard J. Haxby argued, Butte, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Allen B. Chronister argued, Assistant Attorney
         General, Helena, Montana
        John G. Winston, County Attorney, Butte, Montana
        Nadine Scott argued, Deputy County Attorney,
         Butte, Montana

---

          Submitted:  September 30, 1977

           Decided:  JAN 18 1978

Filed: JAN 18 1978

_Thomas J. Kearney_     Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant Myron Larson appeals from a conviction entered in the District Court, Silver Bow County, on charges of mitigated deliberate homicide, in violation of section 94-5-103, R.C.M. 1947, and aggravated assault, in violation of section 94-5-202, R.C.M. 1947.

On March 13, 1975, in the District Court, Silver Bow County, defendant was charged by Information with two counts of mitigated deliberate homicide and one count of aggravated assault following a shooting incident at a residence in Butte, Montana, which resulted in the deaths of Curt Phillips and Mike McDermott and the wounding of Mike Phillips.

Defendant's first trial on these charges was declared a mistrial when the jury was unable to return a verdict. Following the second trial, defendant was found guilty of mitigated deliberate homicide for the killing of Curt Phillips and aggravated assault for the wounding of Mike Phillips. Defendant was found not guilty of mitigated deliberate homicide in the death of Mike McDermott. Defendant was sentenced to prison terms of 30 and 15 years, to run concurrently.

On February 16, 1975, between the hours of 2:00 and 3:30 a.m., a drinking party was in progress at the Butte apartment of Gary Larson, defendant's brother. Approximately 15 to 20 people were there, including Myron and Gary Larson, Curt and Mike Phillips, and Mike McDermott.

Defendant and Curt Phillips got into an argument over the opening of a door in the kitchen. Phillips wanted the door to remain closed and defendant wanted it opened to let fresh air into the apartment. Defendant testified Phillips swung first and he responded by striking Phillips with a leather sapp he was carrying. The two men wrestled to the floor. Defendant's brother

Gary separated the two combatants and told Curt Phillips to leave the apartment. Phillips refused to leave. Gary Larson then went to his bedroom, retrieved a .38 caliber pistol, returned to the kitchen and fired a shot into the ceiling. Gary then placed the gun in the refrigerator and began fighting with Curt Phillips. Phillips managed to get on top of Larson and was beating him with his fists and the plaster cast he had on his arm, as the two men were on the floor.

Defendant, whose face and jaw at the time were wired together as the result of an altercation in which he had been involved some five weeks earlier, attempted to enlist the aid of several persons in an effort to break up the fight. One person tried to pull Phillips off of Gary Larson but abandoned the task when he was struck or kicked by Phillips' brother Mike.

As Curt Phillips was standing over and apparently kicking Gary Larson, defendant acted. He pulled a .357 caliber pistol from his back pocket holster and shot Phillips in the back. Mike Phillips then lunged at defendant and defendant shot him in the arm, knocking him down. Mike McDermott then grabbed defendant, the two men wrestled backwards into a bathroom and the gun discharged, killing McDermott.

After the shootings someone called the Butte city police. The officers who arrived at the scene determined that Curt Phillips and Mike McDermott were dead. Defendant told the officers he had shot the two men, gave one of the officers the .357 and the leather sapp, and was taken into custody.

Defendant presents five issues for review:

1) Whether the District Court should have either dismissed the action or directed a verdict in defendant's favor on the grounds of insufficient evidence.

2) Whether the verdicts were consistent with the

evidence presented relative to the defenses of self-defense and defense of another.

3) Whether the verdicts were consistent with given instructions on self-defense and defense of another.

4) Whether several given instructions were proper and whether offered but refused instructions should have been given.

5) Whether defendant was prejudiced by the state's attempts to have certain items admitted as evidence.

Issues 1 and 2 challenge the sufficiency of the evidence to support defendant's convictions. Defendant contends the evidence shows his conduct was reasonable and the shootings were justifiable because he was acting in defense of himself and his brother.

Section 94-3-102, R.C.M. 1947, deals with the justifiable use of force in defense of the actor or another and provides in part:

> "A person * * * is justified in the use of force likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or another, or to prevent the commission of a forcible felony."

This Court stated in State v. Brooks (1967), 150 Mont. 399, 410, 436 P.2d 91:

> " * * * to justify a homicide by self-defense, there must be evidence that the party killing acted under the influence of reasonable fear that someone was going to be murdered or seriously injured. * * *."

Evidence presented by defendant went to establishing the reasonableness of his fear for the safety of his brother as justification for the shooting of Curt Phillips and the reasonableness of his fear for his own safety as justification for the shooting of Mike Phillips.

This evidence included testimony from a psychologist who evaluated defendant at Warm Springs State Hospital to the effect

defendant was fearful for his brother and himself on the night of the shootings and that such fear was reasonable. Defendant's own testimony in this regard included this exchange:

"Q. At that particular point in time did you have any fear for the well being or the life of Gary? A. Yes, I did.

"Q. Why is that? A. Well, I knew what I'd gone through when somebody had worked me over, knocked me out and worked me over. I woke up in the hospital. I didn't even know what happened until the doctor explained to me that the side of my head was caved in. * * * I was -- I was really afraid for my brother. It was just really apparent to me that he could suffer the same kind of damage, if not more.

"Q. Did you think at that particular time that Curt Phillips was capable and able to inflict that type of injury? A. My God, yes. Curt was a hefty person and he was throwing all of his weight into those kicks. The first time he kicked my brother, my brother was trying to get up off the floor like this (showing) and the first kick, he got Gary in the side of the face and it spun him completely around like he was on a spit or something, just completely around. I couldn't believe it. I thought, boy if I got kicked like that, my face would fall apart again.

"Q. At that particular point in time did you make any effort to take the sapp and go over and hit Curt in the back of the head with it or anything to stop him from doing any further damage? A. I asked Mike to please stop it, or I said to him 'Stop him.' And Mike had threatened me that I'd better not do anything to stop them or he'd do the same to me. So I -- I was really afraid that if I took a step and turned my back to Mike that he'd land base me on the back of the head or something.

" * * *

"Q. Just prior to the time that you -- or that Curt was shot, what was he doing? A. He was bending over to give my brother a third kick.

" * * *

"Q. What did you do then? A. I shot. I had to stop him. I had to stop him from kicking. A kick like that could do some damage. Those shoes were heavy."

The state concedes defendant was not required to sit idly by while his brother was being beaten, but argues defendant's use of the pistol was an excessive use of force and unreasonable under the circumstances. Evidence the state presented

- 5 -

tended to show Gary Larson was not badly beaten by Curt Phillips. To the officers who arrived at the scene shortly after the shootings, defendant's brother did not appear to be injured, and he made no complaint to them of having been beaten. Curt Phillips' brother Mike testified the fight was "fair". The only witness called who was at the scene and was unrelated to any of the participants testified she did not see Curt Phillips kicking Gary Larson; she did see Phillips hitting Larson with his cast; and, that she had not seen all of the fight.

Defendant testified he was not intoxicated and was thinking clearly at the time of the incident. He also testified he had been around guns since an early age and that although he had not meant to kill Curt Phillips, he "probably could have" wounded him. Testimony indicated only defendant and his brother were armed with any kind of weapon at the time of the incident.

As to the wounding of Mike Phillips, the testimony was similarly conflicting. Defendant asserted he was protecting himself from Phillips' attack when he shot the other man in the arm. Phillips testified he was moving away from defendant when he was shot.

Defendant argued the jury improperly rejected his claim the shootings were justified under the circumstances. Whether the circumstances were such as to justify defendant's actions is clearly a question of fact for the jury. State v. Fine (1931), 90 Mont. 311, 315, 2 P.2d 1016; State v. Harkins (1929), 85 Mont. 585, 601, 281 P. 551. The jury may have believed defendant feared for his own life or for the life of his brother, and still found the force defendant used to have been excessive. As this Court stated in State v. Fuger (1976), ____Mont.____, 554 P.2d 1338, 1341, 33 St.Rep. 887, 890, citing the annotator's note to section 94-3-102, R.C.M. 1947:

> "'* * * the proper amount of force which
> may be used and remain justified -- [is] a ques-
> tion to be determined by the jury.'"

There was sufficient evidence for the jury to determine defendant's fatal shooting of Curt Phillips and his wounding of Mike Phillips were not justified.

Defendant's Issues 3 and 4 challenge the trial court's giving of certain instructions and refusal of others. Defendant contends two of his proposed instructions relative to the defenses of self-defense and defense of another should have been given. Four instructions directly concerning these matters, two offered by defendant and given over the state's objections and two offered by the state and given without objection, were given. The given instructions accurately and completely set out the law concerning self-defense and defense of another, and are not challenged by defendant. The refused instructions were merely repititious.

Defendant contends the district court erred in refusing two of his proposed instructions on presumption of innocence and reasonable doubt. Seven instructions on these matters were given, and defendant does not argue they were insufficient or incorrect statements of the law. He argues that he was entitled to a "very short and brief statement" as to these requirements. Since the legal theories of these proposed instructions were covered by given instructions, it was not error for the trial court to refuse them. State v. Lukus (1967), 149 Mont. 45, 53, 423 P.2d 49.

Defendant also challenges given Instruction No. 20, arguing his proposed Instruction No. 14 should have been given in its place. Defendant's proposed instruction No. 14 states:

> "A person acts knowingly with respect to his con-
> duct or to an element of the offense when he is
> aware of his conduct or when he is aware of the

- 7 -

existence of circumstances described by the
statute defining the offense."

As given, given Instruction No. 20 includes the above, and adds:

"(When knowledge of the existence of a particular
fact is an element of the offense, such knowledge
is established if a person is aware of a high
probability of its existence.)"

Defendant argues the additional language further defining "knowledge" was prejudicial as having no relation to self-defense and defense of another. The crimes charged, mitigated deliberate homicide and aggravated assault, require "knowledge" or "purpose" on the part of the accused. The jury therefore was entitled to a complete definition of "knowledge" and the given instruction, taken almost verbatim from section 94-2-101,(27), R.C.M. 1947, was such a definition.

Defendant's Issue 5 contends he was prejudiced by the state's attempts to have certain items admitted into evidence. The state sought to have a .357 pistol, a holster, a leather sapp, and some bullet fragments, among other items, received during its case-in-chief. Defendant objected to their admission on the grounds of insufficient foundation, with the trial court reserving its ruling. During cross-examination of defendant the leather sapp was admitted; the other exhibits were ultimately refused.

There was a connection between these items and the crimes charged. All were recovered at the scene of the shootings by the officers called to investigate. It was during the testimony of these officers that the state tried to lay a foundation for the admission of these items. The refusal of the items reflects the inability of the state to lay a proper foundation for the admission of evidence, not a bad faith attempt to prejudice the jury. None of the items was irrelevant, immaterial, or otherwise inadmissible in an essential way, and

defendant's conviction cannot be reversed on the grounds their admission was attempted.

The judgment is affirmed.

_Daniel J. Shea_
Justice

We concur:

_Paul B. Hart_
Chief Justice

_Frank J. Haswell_

_John Conway Harrison_

_Gene B. Daly_
Justices