No. 89-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

TONI LEA OTTWELL,

        Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael Donahoe, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        James Yellowtail, Asst. Atty. General, Helena
        Mike McGrath, County Attorney; Carolyn A. Clemens,
        Deputy County Attorney, Helena, Montana

Submitted on Briefs: July 7, 1989

Decided: September 14, 1989

Filed:

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The jury empaneled in the District Court for the First Judicial District, Lewis and Clark County, found Toni Lea Ottwell, the defendant, guilty of felony assault pursuant to § 45-5-202(2)(b), MCA. The District Court sentenced the defendant to ten years at the Montana State Prison and suspended the sentence in its entirety subject to conditions. Defendant appeals. We affirm.

The issues raised on appeal are:

1. Whether the exclusionary rule bars admission of evidence of a person's criminal conduct which occurred in response to a Fourth Amendment violation.

2. Whether a defendant who knowingly or purposely causes reasonable apprehension of serious bodily injury by use of a weapon is properly charged with felony assault pursuant to § 45-5-202(2)(b), MCA.

3. Whether the District Court erred by instructing the jury as to the definition of the term "knowingly," as set forth in § 45-2-101(33), MCA, when a defendant is charged under § 45-5-202, MCA, with felony assault.

4. Whether the defendant was denied a fair trial under the doctrine of "cumulative error."

In December, 1987, Toni Lea Ottwell, the defendant, was a resident at the Mountain View School, a girls' correctional facility located north of Helena, Montana. Ottwell and four other residents of the school escaped from the facility on December 24, 1987. Two of the girls were apprehended the following day in Helena. The remaining escapees, including Ottwell, obtained a .44 magnum caliber handgun from a residence in Clancy, Montana, returned to Helena and rented a room at a local hotel.

2

On December 26, 1987, two members of the Mountain View School staff, William Unger, Superintendent, and Don Thompson, Social Worker, discovered that the girls were at the hotel. Unger and Thompson went to the hotel, confirmed with the hotel manager that the girls were in the hotel, and were given a key to the girls' room by the manager. After Unger knocked on the door of the girls' room and identified Ottwell's voice, he used the key to open the door and both men entered the room. Unger told the girls to get ready, that he was taking them back with him. Shortly thereafter Ottwell picked up the loaded handgun and pointed it at the two men. She told Thompson to close the door and stated that the gun was loaded and that she wasn't afraid to use it. Thompson refused to close the door but after a few minutes of trying to persuade Ottwell to put down the gun, Unger and Thompson left the room. Ottwell and the other two girls escaped through the hotel window and were apprehended by the police later that evening.

Ottwell, a minor, was charged as an adult with the offense of felony assault by an Information filed in the District Court for the First Judicial District, Lewis and Clark County. A jury trial commenced on May 31, 1988 and on June 1, 1988, the jury returned a verdict of guilty. On October 25, 1988, final judgment and sentence was entered. Ottwell was sentenced to ten years at the Montana State Prison. The District Court suspended Ottwell's sentence in its entirety subject to conditions. Ottwell appeals.

The first issue raised on appeal is whether the exclusionary rule bars admission of evidence of a person's criminal conduct which occurred in response to a Fourth Amendment violation.

Ottwell argues that the entry of her hotel room by Unger and Thompson was unconstitutional and that evidence of all

3

events subsequent thereto, including her felonious assault, should have been suppressed. The facts are undisputed that Unger and Thompson, state employees from the girls' correctional facility, entered Ottwell's hotel room without permission or without a warrant. Nonetheless, assuming arguendo that an illegal entry occurred, we uphold the District Court's decision to deny Ottwell's motion to suppress evidence of her criminal conduct which occurred in response to a Fourth Amendment violation.

The Fourth Amendment of the United States Constitution and Article II, § 11 of the Montana Constitution affords all persons the freedom from unreasonable governmental searches and seizures. Thus, absent exigent circumstances, police officers and other government officials must obtain a search warrant based upon probable cause before entering a home or making an arrest. Payton v. New York (1980), 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639, 653; State v. O'Neill (1984), 208 Mont. 386, 393, 679 P.2d 760, 763-64. The exclusionary rule, which bars evidence obtained as a result of an unconstitutional search or seizure, is the primary vehicle which helps to ensure protection from an unreasonable governmental search or seizure. Wong Sun v. United States (1963), 371 U.S. 471, 484-85, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441, 453. However, courts have refused to extend the exclusionary rule to suppress evidence of a person's independent criminal conduct which occurred in response to an unconstitutional search or seizure. See, e.g., People v. Klimek (Ill.App. 1981), 427 N.E.2d 598; State v. Boilard (Me. 1985), 488 A.2d 1380; State v. Burger (Or.Ct.App. 1982), 639 P.2d 706; State v. Kittleson (Minn. 1981), 305 N.W.2d 787; Commonwealth v. Saia (Mass. 1977), 360 N.E.2d 329. Likewise, under the facts of this case, we refuse to extend the exclusionary rule to suppress evidence

4

of a person's assaultive conduct towards a state employee who committed a Fourth Amendment violation. Such evidence does not constitute the "fruit of the poisonous tree" and thus the purpose of the exclusionary rule--to protect a person from unreasonable searches or seizures through suppression of evidence--would not be accomplished by its application in such a situation. On the contrary, to allow a person whose Fourth Amendment rights were violated to respond with unlimited violence towards the violator and then to grant the person immunity via the exclusionary rule, would create intolerable results. Such a ruling would allow, and possibly even encourage, more violence. We therefore uphold the District Court's decision to deny Ottwell's motion to suppress evidence of Ottwell's independent criminal conduct which occurred as a response to a Fourth Amendment violation.

The second issue raised on appeal is whether a defendant who knowingly or purposely causes reasonable apprehension of serious bodily injury by use of a weapon is properly charged with felony assault pursuant to § 45-5-202(2)(b), MCA.

Ottwell argues that the District Court erred by not granting her motion to dismiss on the ground that the Information, by its terms, only alleged misdemeanor assault as defined in § 45-5-201(1)(d), MCA. This statute provides in pertinent part that

> (1)    A person commits the offense of assault if he:
>
> . . .
>
> (d)      purposely or knowingly causes reasonable apprehension of bodily injury in another. The purpose to cause reasonable apprehension or the knowledge that reasonable apprehension would be caused shall be presumed in any case in which a person knowingly points a firearm at or in the direction of another . . .

5

Specifically, Ottwell attempts to argue that the language of this misdemeanor statute--"shall be presumed in any case in which a person knowingly points a firearm at or in the direction of another"--is a conclusive presumption that prevents the State from charging a defendant with felony assault once the State proves that the defendant pointed a gun towards another. We disagree.

Ottwell fails to acknowledge the difference in proof between the misdemeanor assault statute, § 45-5-201, MCA, and the felony assault statute, § 45-5-202, MCA. The felony assault statute provides in pertinent part that

> (2) A person commits the offense of felony assault if he purposely or knowingly causes:
>
> . . .
>
> (b) reasonable apprehension of <u>serious</u> bodily injury in another by use of a weapon . . . (Emphasis added.)

Section 45-5-202(2)(b), MCA. The felony assault statute addresses the reasonable apprehension of <u>serious</u> bodily injury and the misdemeanor assault statute addresses the reasonable apprehension of bodily injury. The statutory definitions of "serious bodily injury" and "bodily injury" are drastically different and thus require a different degree of proof. See, § 45-2-101(5) and (59), MCA. Merely because the misdemeanor statute contains a presumption regarding a person who knowingly points a firearm at or in the direction of another, does not make the statute the exclusive vehicle for prosecution when such a conduct occurs. State v. Crabb (Mont. 1988), 756 P.2d 1120, 1124, 45 St.Rep. 966, 971. A county attorney has the discretion to charge a defendant under either § 45-5-201, MCA or § 45-5-202, MCA, and a

6

subsequent conviction will stand if the evidence supports the conviction.

On March 29, 1988, the County Attorney for Lewis and Clark County filed an Information alleging that Ottwell "purposely or knowingly caused reasonable apprehension of serious bodily injury in Bill Unger and Don Thompson . . . by pointing a gun at them and threatening to shoot them . . ." The facts of this case supports the proposition that Ottwell knowingly or purposely used a weapon to cause reasonable apprehension of serious bodily injury. The District Court therefore properly denied Ottwell's motion to dismiss.

The third issue raised on appeal is whether the District Court erred by instructing the jury as to the complete definition of the term "knowingly," as set forth in § 45-2-101(33), MCA, when a defendant is charged with felony assault under § 45-5-202, MCA.

The definition of "knowingly" is set forth in § 45-2-101(33), MCA, as follows:

> "Knowingly"--a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Equivalent terms such as "knowing" or "with knowledge" have the same meaning.

The jury was instructed, with respect to the term "knowingly," as follows:

A person acts knowingly:

7

(1) when he is aware of his conduct; or

(2) when he is aware under the circumstances, that his conduct constitutes a crime; or

(3) when he is aware there exists the high probability that his conduct will cause a specific result; or

(4) with respect to a specific fact, when he is aware of a high probability of that fact's existence.

Ottwell attempts to argue that not all of the definitions contained in § 45-2-101(33), MCA, apply to every alleged criminal violation and therefore the District Court erred in giving the entire definition when a person is charged with one specific crime. Ottwell argues that if charged under § 45-5-202(2)(b), MCA, the only part of the definition that is applicable is whether an actor purposely or knowingly caused a specific result, namely, the apprehension of serious bodily injury, which is found in subsection 3 of the instruction. We disagree.

In Montana, a person does not need to "form the intent to commit a specific crime or intend the result that occurred to be found guilty of knowingly committing a crime." State v. Blalock (Mont. 1988), 756 P.2d 454, 456, 45 St.Rep. 1008, 1010. Conviction for the offense of felony assault thus does not require proof of specific intent. On the contrary, an instruction suggesting that specific intent to commit a felony assault is required would be erroneous. However, the District Court properly gave the jury the entire definition for "knowingly." Previously, when the requisite intent was "knowledge" or "purpose," this Court has held that the jury was entitled to a complete definition of "knowledge" as set out in the statute. State v. Larson (1978), 175 Mont. 395,

8

402, 574 P.2d 266, 270. We therefore uphold the District Court's decision in instructing the jury on the entire definition for "knowingly."

The last issue raised on appeal is whether the defendant was denied a fair trial under the doctrine of "cumulative error."

The doctrine of cumulative error "refers to a number of errors which prejudice defendant's right to a fair trial." State v. Close (Mont. 1981), 623 P.2d 940, 948, 38 St.Rep. 177, 187-88. Ottwell argues that five alleged errors prejudiced her right to a fair trial and therefore invoked the cumulative error doctrine. The first alleged error is that the District Court admitted, over Ottwell's objection, the State's Exhibit Number 1, a letter from Unger to Thompson. On appeal, Ottwell fails to argue the basis of her objection and then merely argues that the letter was not furnished by the State in discovery as a statement of a witness. The record demonstrates otherwise. The letter was read into the record by the District Court in the presence of Ottwell and her counsel on May 18, 1988, two weeks prior to the trial. In light of the record, Ottwell's argument on this alleged error lacks merit.

The second alleged error is that the District Court admitted part of a written report prepared by Unger and given to a police officer. Specifically, Ottwell argues that a proper foundation was not laid for the admission of the recorded recollection. In light of the record, this assertion by Ottwell also lacks merit. At trial, Unger testified on cross-examination that he did not recall the exact statements Ottwell made during the hotel room incident. He also testified that he had previously given a statement to the police regarding Ottwell's statements at a time when his recollection was more accurate. He identified a copy of his

9

statement on redirect examination and was then allowed to read the relevant portion into the record. The statement in question therefore constitutes an exception to the hearsay rule under Rule 803(5), M.R.Evid. Determination of whether a proper foundation has been laid lies in the discretion of the District Court and may not be overturned absent a clear abuse of discretion. State v. McKenzie (1978), 177 Mont. 280, 303, 581 P.2d 1205, 1219. The record indicates that the proper foundational evidence was before the District Court at the time admission of the statement was requested and thus we find that the District Court did not abuse its discretion.

The third alleged error raised by Ottwell is that the District Court admitted evidence of additional assaultive behavior. Ottwell first attempts to argue that it was error to allow Unger to testify that, in his belief, Ottwell was capable of shooting him. Ottwell failed to object to this testimony at trial. The matter is therefore deemed waived under § 46-20-104(2), MCA. In addition, Ottwell asserts that Thompson was improperly allowed to testify that she pointed a gun at Thompson outside of the hotel room. Ottwell fails to state the reason for her objection to the foregoing testimony. We decline to provide a possible reason or explanation for Ottwell's unfounded assertions. We therefore find that no error resulted under these allegations.

The fourth alleged error is that a statement made by Ottwell was improperly admitted into evidence. Another escapee testified that Ottwell stated that she should have shot her victims. Ottwell argues that this statement was hearsay and not relevant. We disagree. The statement is clearly a relevant indication of Ottwell's state of mind and awareness of her actions. Further, the statement was made by Ottwell, a party to the case, and is therefore not within the definition of hearsay. See, Rule 801(d)(2)(A), M.R.Evid.

10

Ottwell also alleges that the District Court erred by admitting "other crimes" evidence in violation of State v. Just (1979), 184 Mont. 262, 602 P.2d 957. On appeal, Ottwell fails to identify the objectionable evidence and cites no authority. We therefore find that the District Court did not err on this issue. In light of finding no errors on the part of the District Court, we find that the cumulative error doctrine is not applicable in this case.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11

Mr. Justice John C. Sheehy, dissenting:


Years ago, the Congress enacted a "no-knock" provision empowering federal agents (notably the FBI) to burst into rooms or apartments occupied by persons whom the agents suspected of crime. This patently unconstitutional law passed the U.S. Senate with but one dissenting vote. That dissenting vote, we can be proud to state, was cast by the Senator from Montana, the Honorable Lee Metcalf. The rest of the Senate bowed to what it perceived to be public pressure and forsook the Constitution.

Two years later an embarrassed Senate rescinded and revoked its erroneous actions.

This is a "no-knock" case and I dissent.

_____
Justice


Mr. Justice William E. Hunt, Sr.:

I join in the dissent of Justice Sheehy.


_____
Justice