No. 00-800

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 330

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

MATTHEW CALVIN COURVILLE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Milton Datsopoulos, Datsopoulos, MacDonald & Lind, Missoula, Montana

        For Respondent:

        Mike McGrath, Montana Attorney General, John Paulson, Assistant Montana
Attorney General, Helena, Montana; Robert J. Long, Lake County Attorney,
Polson, Montana

Submitted on Briefs:  September 20, 2001

Decided:  December 20, 2002

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1  Appellant Matthew Courville (Courville), appeals an order of the Twentieth Judicial District Court, Lake County, denying his motion to suppress and motion for a new trial. We affirm.

¶2  We address the following issues on appeal:

¶3  1. Did the District Court properly deny Courville's motion to suppress evidence?

¶4  2. Did the District Court properly instruct the jury regarding the statutory prohibition against the use of force to resist arrest?

¶5  We do not address the final issue presented by Courville, whether his sentence enhancement under § 46-18-221, MCA, for use of a weapon is valid under *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, because he failed to preserve this issue for appeal. The general rule is that issues not raised before the trial court and new legal theories are not considered by this Court on appeal because it is unfair to fault the trial court on an issue it was never given an opportunity to consider. *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (citing *Day v. Payne* (1996), 280 Mont. 273, 276, 929 P.2d 864, 866). While Courville claims he preserved this issue for appeal because he mentioned due process concerns with the sentence enhancement under § 46-18-221, MCA, we do not agree that these general assertions to the trial court without any argument analyzing his assertions in the context of *Apprendi*--indeed, he did not even cite to this case--were sufficient to preserve this issue for appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. The Facts**

¶6  On or about September 10 and 11, 1999, Lake County Deputy Sheriff Larry Kirby (Kirby) was patrolling in the southern portion of Lake County, west of Ronan near Sloan's Bridge. Kirby

decided to patrol this area because earlier in the evening, he overheard a dispatch to officers in Ronan reporting possible underage drinking in the area. While he was checking out an abandoned vehicle, Kirby received and responded to a call for assistance from Flathead Tribal Officer Orsino Walker (Walker). Walker was also in the area and had come across possible a drinking party. Individuals at that party informed Kirby that people in two trucks that left when Walker initially approached had possibly been drinking and were of questionable age.

¶7 Walker and Kirby decided to continue patrolling and split up in order to cover a larger area. After encountering rough road, Walker turned around and the two decided to meet again near the bridge. As Kirby approached the bridge, two trucks pulled onto the road from a side road and proceeded in front of him. Walker was approaching from the opposite direction. When he saw the trucks, Walker activated his overhead lights, but the trucks failed to stop. A pursuit ensued in which Walker and Kirby followed the two trucks.

¶8 One truck, the one driven by Courville, pulled off the main road onto a river access road. Kirby followed Courville's vehicle while Walker continued to pursue the truck on the main road. Courville eventually stopped his truck and his passenger, Garrett Finley (Finley), bailed out of the truck and took off running, later testifying that he did not want to be arrested.

¶9 Kirby saw Finley run off and then saw the driver's side door of Courville's vehicle open but no one got out. Kirby drew his gun and approached the truck. Courville was sitting in the driver's seat, staring ahead with his hands on the steering wheel. Kirby identified himself and Courville eventually released the steering wheel and allowed Kirby to remove him from the truck. Kirby had Courville face the truck and put his hands on top of the truck. Kirby then pushed Courville's legs apart to put him in a wider stance.

3

¶10    As Kirby was putting his gun back into his holster in order to get handcuffs for Courville, the two somehow ended up on the ground with Courville on top. Courville struck Kirby in the face a number of times. Courville jerked Kirby's gun away from him and hit him in face with it. Courville then got off Kirby, threw the gun into the back of his truck and attempted to leave. Kirby got to his feet and was able to retrieve the gun. He attempted to stop Courville but was unable to and Courville fled the scene.

¶11    Later examination revealed that Courville had struck Kirby's head in seven places, damaging his left eye and causing some loss of vision. Courville shattered the bones in Kirby's nose requiring surgical reconstruction. In addition, Kirby lost four teeth, broke a leg bone, fractured ribs, and required a number of stitches, among other injuries. Much of the incident was recorded by the video camera on the front of Kirby's patrol car. Courville was arrested a few hours later and admitted he struck Kirby with Kirby's gun.

**B. The Procedural History**

¶12    As a result of this incident, Courville was charged with two counts of felony assault on a police officer, felony criminal endangerment, misdemeanor reckless driving, and misdemeanor resisting arrest. Courville pled guilty to the two misdemeanors. He then made a motion to dismiss the remaining charges on grounds of double jeopardy. Both the District Court and this Court, on Courville's petition for a writ of supervisory control, denied Courville's motion. Courville also made a motion to suppress, asserting that all the evidence that served as grounds for the charges against him should be suppressed under the exclusionary rule because Kirby did not have particularized suspicion to stop him in the first place. Based on this motion, Courville asserted that all the charges against him should be dismissed. The District Court denied the motion, holding that

4

Kirby had particularized suspicion.

¶13    The felony charges were then submitted to a jury trial. The jury returned a verdict of guilty on one count of felony assault on a police officer in violation of § 45-5-210(1)(d), MCA, and found Courville not guilty on the other two counts. Following trial, Courville renewed his motion to suppress. He also filed a motion for a new trial arguing that the trial court erred by instructing the jury on the prohibition against the use of force to resist arrest by a peace officer. The District Court ruled against Courville on both issues and sentenced him to a term of twenty years, eight suspended, for the assault. The court also sentenced Courville to a consecutive term of ten years, with six suspended, based on his use of Kirby's gun in the commission of the offense. Courville now appeals.

## II. STANDARD OF REVIEW

¶14    We review a district court's denial of a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether those findings are correctly applied as a matter of law. *State v. Dawson*, 1999 MT 171, ¶ 13, 295 Mont. 212, ¶ 13, 983 P.2d 916, ¶ 13. Further, we will affirm a district court's ruling if the court reaches the correct result for the wrong reason. *State v. Parker*, 1998 MT 6, ¶ 20, 287 Mont. 151, ¶ 20, 953 P.2d 692, ¶ 20.

¶15    The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Hall*, 1999 MT 297, ¶ 39, 297 Mont. 111, ¶ 39, 991 P.2d 929, ¶ 39. A district court has broad discretion when it instructs the jury. *Hall*, ¶ 39. To constitute reversible error, the jury instructions must prejudicially affect the defendant's substantial rights. *State v. Goulet* (1997), 283 Mont. 38, 41, 938 P.2d 1330, 1332.

5

¶16    **1. Did the District Court properly deny Courville's motion to suppress evidence?**

¶17    Courville first asserts that the District Court erred in denying his motion to suppress. He argues that all evidence of the encounter he had with Kirby is inadmissible under the exclusionary rule because Kirby did not have particularized suspicion to pull him over for an investigatory stop in the first place. This evidence includes the videotape of the incident, Kirby's statements, Courville's statements, evidence of Kirby's injuries, and any other evidence of the incident. Because Courville's conviction is based only on the events following the stop, Courville asserts that once this evidence is suppressed, the charges against him must be dismissed.

¶18    The State counters that Kirby had particularized suspicion to investigate Courville. Alternatively, the State asserts that even if Kirby did not have particularized suspicion, the evidence was properly admitted because criminal conduct committed in response to a Fourth Amendment violation is admissible. Courville argues that we cannot address this alternative position because the State raised it for the first time on appeal. We disagree. Our review of the record shows that the State did make this argument to the District Court in its response to Courville's initial motion to suppress.

¶19    While the trial court determined that Kirby did have particularized suspicion for his stop of Courville, we agree with the State that we do not need to reach that issue because the evidence in this case would be admissible whether the stop was supported by particularized suspicion or not. And, as already mentioned, we will affirm a trial court when it reaches the correct result even if for the wrong reason. *Parker*, ¶ 20.

¶20    It is well settled that the Fourth Amendment to the United States Constitution and Article II,

6

Sections 10 and 11 of the Montana Constitution, require law enforcement officers to have particularized suspicion to conduct an investigatory stop. *See State v. Jarman*, 1998 MT 277, ¶ 9, 291 Mont. 391, ¶ 9, 967 P.2d 1099, ¶ 9. In order to prevent abuse of these constitutional rights by law enforcement officers, the courts have formulated the exclusionary rule. *State v. Pipkin*, 1998 MT 143, ¶ 12, 289 Mont. 240, ¶ 12, 961 P.2d 733, ¶ 12. This rule requires that if a stop is not supported by particularized suspicion, evidence collected from that stop, also known as the "fruit of the poisonous tree," is inadmissible in proceedings against the accused. *See Jarman*, ¶ 16. Quite simply, the exclusionary rule is used as a means to deter the state from violating its citizens' constitutional rights. *Pipkin*, ¶ 12.

¶21 That said, it is also well settled that the exclusionary rule does not apply in every instance. *State v. New* (1996), 276 Mont. 529, 536, 917 P.2d 919, 923. Rather, if the evidence is so attenuated or dissipated from the government's constitutional violation such that the evidence loses is primary constitutional taint, then the evidence is admissible. *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (whether exclusion of evidence is appropriate depends on whether "the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost."). For example, evidence loses its primary constitutional taint and is not excluded when the same evidence is discovered from a source independent of the constitutional violation, or where the evidence is such that it would have been inevitably discovered. *State v. Therriault*, 2000 MT 286, ¶ 58, 302 Mont. 189, ¶ 58, 14 P.3d 444, ¶ 58.

¶22 In this case, we consider whether Courville's criminal conduct committed after Kirby's stop was admissible regardless of whether there was particularized suspicion for the stop in the first

place.

¶23    We previously addressed this issue in *State v. Ottwell* (1989), 239 Mont. 150, 154-55, 779 P.2d 500, 502-03.  In *Ottwell*, the defendant pointed a gun at the state officials who allegedly improperly entered her hotel room without a search warrant.  While we declined to address whether the entry was actually a Fourth Amendment violation, we held that the evidence of the defendant pointing a gun was admissible because the exclusionary rule does not apply to evidence of criminal conduct committed in response to a claimed Fourth Amendment violation.  We based our decision on the policy that to allow a person whose rights to be free from unreasonable searches and seizures were allegedly violated, to respond with unlimited violence would create intolerable results.  *Ottwell*, 239 Mont. at 154-55, 779 P.2d at 502-03.  We also note that the deterrent effect of the exclusionary rule would not be accomplished by excluding this type of evidence.

¶24    We see no reason to deviate from the rule we established in *Ottwell*.  Exclusion of Courville's criminal conduct committed in response to his claim that Kirby's stop was not based on particularized suspicion would simply encourage violence towards law enforcement officers attempting to do their duties in the field.  Indeed, exclusion of this type of evidence may very well deter law enforcement from acting even on particularized suspicion.  No good public policy is served by encouraging persons stopped by law enforcement to respond with violence--even where the stop may later be determined to have not been supported by particularized suspicion.  More to the point, if an accused believes that his right to be free from unreasonable searches and seizures has been violated by an improper investigatory stop, his remedy at law is to move to suppress the evidence seized as a result thereof.  Section 46-13-302, MCA.

¶25    Accordingly, we reaffirm *Ottwell.*  On the facts here and without reaching the merits of

8

whether Kirby's investigatory stop was supported by particularized suspicion, we conclude that the evidence of Courville's criminal conduct committed against Kirby is so attenuated from the claimed improper investigatory stop that the evidence of his conduct lost its primary constitutional taint--if, indeed there ever was any--and that the evidence is, therefore, not subject to the exclusionary rule. We hold that the District Court reached the correct result in this case by denying Courville's motion to suppress and admitting the evidence of his violent encounter with Kirby.

¶26 As an aside, it is also worth noting that Courville's explanation of the encounter begs our conclusion. Courville asserted at trial that he was acting in self defense. Such a defense requires an interpretation of the facts, a question properly left to the jury. Had Courville submitted to Kirby's authority, it is likely that no violent confrontation would have followed. Courville would then have been free to assert the claimed violation of his right to be free from unreasonable searches and seizures and that any evidence discovered in violation of this right be suppressed. Instead, Courville chose to violently resist Kirby following the stop. As a result, the jury was properly charged with deciding whether Courville committed a crime or whether he acted in self defense.

¶27 **2. Did the District Court properly instruct the jury regarding the statutory prohibition against the use of force to resist arrest?**

¶28 Courville next asserts that he is entitled to a new trial because the District Court erred in giving Instruction 22 regarding the statutory prohibition on the use of force to resist arrest, in light of his self defense theory as instructed in Instruction 21.

¶29 Regarding Courville's theory of self defense, Instruction 21 reads:

A person is justified in the use of force or threat to use force when and to the extent

that he reasonably believes that such conduct is necessary to defend himself against

the imminent use of unlawful force. However, a person is justified in the use of force

9

which is intended to likely to [sic] cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself.

This instruction paraphrases the statute regarding self defense, § 45-3-102, MCA (when use of force justified in defense of the person). Instruction 22 reads:

A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful.

The parties also agree that Instruction 22 is a proper paraphrase of § 45-3-108, MCA, which prohibits the use of force to resist arrest.

¶30 Courville asserts Instruction 22 was given in error for three reasons. First, he contends that Instruction 22 should not have been given because a violation of § 45-3-108, MCA, was not being determined at trial. Second, he asserts that Instruction 22 confused the jury because it completely nullified his defense of self defense. Finally, he asserts that Instruction 22 and § 45-3-108, MCA, violate his constitutional equal protection rights because the prohibition against the use of force in resisting arrest eliminates his "liberty" right of self defense under Article II, Section 3 against police officers.

¶31 The State counters that the District Court properly instructed the jury because Instruction 22 covered law involved in the case and even though the specific crime was not at issue, the law was still relevant. Further, the State asserts that the jury was able to properly consider Courville's defense. Finally, the State asserts that Courville failed to preserve his equal protection argument and failed show any violation of equal protection.

¶32 Addressing the State's last argument first, we disagree that Courville failed to preserve his

10

equal protection theory. The record reflects that he specifically argued that a prohibition against the use of self defense against police officers violated equal protection. Notwithstanding, we agree with the State that the District Court properly instructed the jury.

¶33    As previously stated, we review jury instructions to determine whether the instructions as a whole, fully, and fairly instruct the jury on the law applicable to the case. *Hall*, ¶ 39. We will not reverse the trial court unless the instruction prejudicially affects the substantial rights of the defendant. *Goulet*, 283 Mont. at 41, 938 P.2d at 1332. In this case, none of Courville's arguments demonstrate that the District Court erred.

¶34    We first consider Courville's equal protection argument. Under the Montana Constitution, Article II, Section 4, the first step in resolving a claimed violation of the equal protection clause is to determine whether there are two similarly situated classes that receive different treatment. *In re C.H.* (1984), 210 Mont. 184, 198, 683 P.2d 931, 938. Courville asserts that the prohibition against the use of force to resist arrest allegedly creates two separate classes: those who cannot use self defense against a peace officer and those who can use self defense in any other situation.

¶35    We disagree with this premise--i.e. that the prohibition against the use of force as codified by § 45-3-108, MCA, creates two similarly situated classes subject to different treatment. The use of self defense applies equally to both the classes of persons presented by Courville. In either case, the use of self defense depends on a reasonable belief of imminent harm based on the facts of the situation. Nothing limits this defense to only non-law enforcement aggressors. The plain language of the jury instructions and the statutes upon which the instructions are based support this conclusion.

¶36    Courville claimed that his conduct against Kirby was justified under § 45-3-102, MCA; that

11

he acted in self defense. He presented his defense to the jury. This is precisely what occurs when any criminally accused person claims that the charged conduct was justified under § 45-3-102, MCA. The fact that the actor against whom the defensive conduct is directed happens to be a police officer matters not in the least for purposes of the self defense defense. If Courville had been able to satisfy the jury that he reasonably believed that his conduct was necessary to defend himself against the imminent use of unlawful force by Kirby, then he would have been entitled to acquittal. Unfortunately for Courville, the jury did not find merit in his defense.

¶37 As to § 45-3-108, MCA, the prohibition against the use of force to resist arrest is exactly that: one cannot use force to resist arrest. In contrast, self defense is justified when one reasonably believes that such conduct is necessary to defend his person against the imminent use of unlawful force. In other words, one cannot use force to resist arrest, but one can use force to defend himself if he reasonably believes that such conduct is necessary as against the imminent use of unlawful force.

¶38 While reconciling §§ 45-3-108, MCA and 45-3-102, MCA, in this manner may seem somewhat internally inconsistent, the point to be noted is that the former statute is aimed at encouraging peaceful arrests and at protecting law enforcement officers from violence in the execution of their statutory duties. The latter statute, § 45-3-102, MCA, allows a person to defend himself against the imminent use of unlawful force. Indeed, § 46-6-104(2), MCA, requires that officers only use the force necessary to make an arrest. Section 46-6-104(2), MCA (All *necessary* and *reasonable force* may be used in making an arrest, but the person arrested *may not be subject to any greater restraint than is necessary* to hold or detain that person (emphasis added)); § 45-3-106, MCA; *State v. Prlja* (1920), 57 Mont. 461, 465, 189 P. 64, 66.

¶39 Where the claim is that a peace officer used unlawful force in executing an arrest and the

12

person subject to the restraint reasonably believed that he must defend himself against the imminent use of this unlawful force, then the resolution of those conflicting claims is properly left to a jury. *See also* Compiler's Comments to § 45-3-108, MCA (Illinois, from which the statute was adopted, allows arrestee to protect himself from unlawful or excessive force from officer). Thus, instead of creating two separate classes of persons regarding self defense for equal protection purposes, as Courville argues, the prohibition against the use of force to resist arrest by a peace officer simply adds an additional matter for consideration and resolution by the fact-finder--i.e. whether the person arrested had a reasonable belief that he needed to defend himself against the imminent use of unlawful force by the officer. *See State v. Harkins* (1929), 85 Mont. 585, 601, 281 P. 551, 557 (Whether the circumstances justified defendant as a reasonable person in the belief that he was in imminent danger was a question of fact for the jury).

¶40    As this case illustrates, the claim of self defense in justification of one's conduct is always considered within context and circumstances of the specific event at issue so that the fact-finder may determine whether the accused's belief is reasonable. In this case, Courville's testimony and affirmative defense of self defense were submitted to the jury along with the video tape, Kirby's testimony, photographs and other evidence. *See* § 45-3-115, MCA. Based on this evidence, the jury chose not to believe Courville. In other words, the jury did not believe that, in effecting Courville's arrest, Kirby was using unlawful force that would have justified Courville's reasonable belief that he needed to defend himself from imminent harm. It was the province of the jury to decide whether Courville's belief was reasonable. The jury's verdict reflected their contrary determination. *Compare State v. Heffner*, 1998 MT 181, ¶¶ 30-33, 290 Mont. 114, ¶¶ 30-33, 964 P.2d 736, ¶¶ 30-33 (whether defendants were justified in their use of force against state employee was a question of fact

13

jury resolved against defendants).

¶41     As already noted, Courville's self defense theory failed. But, that does not mean that two separate classes are created by § 45-3-108, MCA, and § 45-3-102, MCA. Accordingly, we reject Courville's claim that his right to equal protection was violated.

¶42     Courville next asserts that the jury was confused by Instructions 22 and 21. Courville claims that the jury could not understand how a person might act in self defense against a police officer in light of the prohibition against resisting arrest. On this premise, Courville asserts that Instruction 22 nullified Instruction 21 and confounded the jury. We disagree.

¶43     As already discussed, when, as here, the fact-finders are presented with the appropriate evidence, trial juries are fully capable of deciding if the accused reasonably believed that he was required to defend himself from the imminent use of unlawful force by a police officer in effecting an arrest. In the case at bar, we conclude that the jury was properly instructed and that neither of the instructions at issue nullified the other or confused the fact-finders.

¶44     Finally, Courville asserts that Instruction 22 was improperly given because the offense of resisting arrest was not presented to the trier of fact to decide. While it is true that Courville's trial jury was not charged with determining whether he unlawfully resisted arrest, it is also true that Courville pled guilty to precisely that offense prior to his trial--i.e. to misdemeanor resisting arrest in violation of § 45-7-301(1)(a), MCA. It is undisputed that Kirby was attempting to arrest Courville at the point when the encounter occurred. Indeed, that was the predicate of Courville's defense. Instruction 22 did nothing more than fully and fairly instruct the jury on the law regarding use of force to resist an arrest. The jury was properly instructed in the relevant law so as to guide their deliberations regarding whether Courville's belief in the need for self defense was reasonable.

14

¶45 We hold that, on the facts of this case, the trial court properly submitted Instructions 21 and 22 to the jury and that no substantial right of Courville was prejudiced.

## IV. CONCLUSION

¶46 In summary, we hold that the District Court correctly denied Courville's motion to suppress and that the court properly instructed the jury.

¶47 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice Terry N. Trieweiler concurring and dissenting.

¶48    I concur with the majority's conclusion that the exclusionary rule does not apply to evidence of Matthew Courville's altercation with Deputy Sheriff Larry Kirby following his detention. I agree that the evidence was admissible pursuant to our prior decision in *State v Ottwell* (1989), 239 Mont. 150, 779 P.2d 500. However, I do not agree with all that is said in the majority Opinion during its discussion of the suppression issue. Specifically, I do not agree that the law of "attenuated" evidence applies in this case. I would simply conclude as the Court did in *Ottwell* that the exclusionary rule does not apply to evidence of criminal conduct committed in response to a claimed Fourth Amendment violation.

¶49    I also disagree with language in ¶ 26 of the majority Opinion to the effect that had Courville simply submitted to Kirby's authority, it is likely that no violent confrontation would have followed. Who caused the violent confrontation, depends on who you believe. While the majority's observation may be true based on Kirby's version of events, it certainly is not supported by Courville's version of events. I do not presume to know which version is correct. However, it is irresponsible to suggest that in every encounter between police and private citizens, the key to a peaceful resolution is to simply submit to the authority of the State no matter how violently or illegally it is imposed.

¶50    I dissent from the majority's conclusion that the District Court did not abuse its discretion when it gave Instruction No. 22 to the jury. The jury was told:

> A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful <u>and the arrest in fact is unlawful</u>.

Instruction No. 22. (Emphasis added.)

¶51    The District Court erred by giving Instruction No. 22 for two reasons. First, Courville pled guilty to resisting arrest long before trial and the instruction was irrelevant to any issue the jury was

16

being asked to decide. Secondly, Courville is correct when he asserts that Instruction No. 22 completely nullified his statutory right to rely on self-defense as a defense to the claim that he assaulted Kirby.

¶52    There was no way for the jury to reconcile the District Court's instruction that Courville was entitled to use force if necessary to defend himself against the imminent use of unlawful force (Instruction No. 21) with the court's subsequent instruction to the jury that Courville was not authorized to use force to resist an arrest no matter how unlawful (Instruction No. 22). The altercation at issue occurred in the context of an arrest. Either Courville was entitled to defend himself or he wasn't. However, the jury was instructed first that he was and then that he wasn't.

¶53    In a classic example of intellectual hairsplitting, the majority concedes that while reconciling § 45-3-108, MCA (related to resisting arrest), and § 45-3-102, MCA (related to self-defense), may seem internally inconsistent, they can be reconciled because § 46-6-104(2), MCA, permits only that degree of force by law enforcement officers necessary to make an arrest. The majority then concludes in ¶ 39 that:

> Where the claim is that a peace officer used <u>unlawful</u> force in executing an arrest and the person subject to the restraint reasonably believed that he must defend himself against the imminent use of this <u>unlawful</u> force, then the resolution of those conflicting claims is properly left to the jury. . . . [Emphasis added.]

¶54    However, the resolution of the conflicting claim was not left to the jury because in Instruction No. 22 the jury was told that it did not matter whether Kirby's arrest was lawful or <u>unlawful</u>. The jury was told that Courville's resistance could not be justified under the law no matter how unlawful Kirby's conduct may have been.

¶55    Because Instruction No. 22 should not have been given in this case, I would reverse Courville's conviction and remand for a new trial with proper instructions to the jury. Therefore, I would conclude that it is not necessary to reach the issue of whether § 45-3-108, MCA, is

17

constitutional.

¶56 However, because the majority addresses the constitutionality of § 45-3-108, MCA, it is necessary to point out that under circumstances other than those present in this case, the statute could implicate a defendant's constitutional rights to equal protection and due process of law. I believe that denial of a person's right to defend himself or herself against the imminent use of unlawful force is a denial of due process. I would also conclude that to deny citizens who are victims of unlawful force by police officers the right to defend themselves, while at the same time permitting victims of unlawful force by anyone other than a police officer to defend themselves, violates the right to equal protection. The effect of § 45-3-108, MCA, would be under some circumstances to nullify the right of self-defense for victims of police violence and, therefore, unconstitutional. When the majority states, as it does in ¶ 36, that:

> If Courville had been able to satisfy the jury that he reasonably believed that his conduct was necessary to defend himself against the imminent use of unlawful force by Kirby, then he would have been entitled to acquittal. . . . ,

the majority is simply incorrect. Based on Instruction No. 22, the jury could not have acquitted Courville no matter how excessive and unlawful the force used by Kirby was proven to be.

¶57 Finally, I disagree with the majority's conclusion that Courville waived his right to rely on the Supreme Court's decision in *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. Courville objected to the enhancement of his sentence based on violation of his right to due process. That objection was sufficient to place the District Court on notice of the constitutional rights at issue in *Apprendi*. There is no rule of procedural law which requires that a party specify the case name for the principle of law on which he or she relies in the district court in order to preserve that issue for appeal. Having concluded that Courville did not waive his right to rely on *Apprendi*, I would also conclude that *Apprendi* prohibits enhancement of his sentence for use of a weapon where there has not been a separate determination by the jury that he used the weapon

in the commission of his crime.

¶58     For these reasons, I would reverse the judgment of the District Court and remand to the District Court for a new trial with proper instructions to the jury.  Aside from that result, I would strike the enhancement of Courville's sentence pursuant to § 46-18-221, MCA, for lack of a jury determination that he, in fact, used a weapon in the commission of his crime.

/S/ TERRY N. TRIEWEILER