DA 06-0298

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 312

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOHANNES ROOKHUIZEN, III,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DC 2005-0032
                    Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender, Joslyn M. Hunt,
            Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Hon. Mike McGrath, Montana Attorney General, John Paulson,
            Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, Rod Souza,
            Deputy County Attorney, Billings, Montana

                      Submitted on Briefs:  April 18, 2007

                                  Decided:   December 4, 2007

Filed:

                                _____
                                      Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Johannes Rookhuizen, III (Rookhuizen) entered a plea of guilty to the crime of felony criminal endangerment, reserving his right to appeal the Thirteenth Judicial District Court's denial of his motion to suppress evidence. We affirm.

## ISSUE

¶2 The issue on appeal is whether the District Court erred in denying Rookhuizen's Motion to Suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Rookhuizen was charged with felony burglary in September 2004 and posted bond in October 2004. The Billings Municipal Court subsequently issued an arrest warrant when Rookhuizen failed to make a scheduled court appearance. Two bail agents, Youngbill Runningfisher and Richard Longshaw, were dispatched on January 7, 2005, to pick up Rookhuizen pursuant to the warrant. Runningfisher and Longshaw went to the home of Angela Stockfish, Rookhuizen's girlfriend and co-signer of Rookhuizen's bail bond. She told them he was not there but that she would have him call them. During this meeting, Stockfish purportedly gave Runningfisher the name and telephone number of her landlord, Ms. Bratcher, and told Runningfisher that he could search her house later and could contact Ms. Bratcher for entry. Rookhuizen called the bail agents shortly after they spoke with Stockfish and scheduled a meeting for later that day; however, he failed to show up for the meeting.

¶4 The following day, Runningfisher and Longshaw, wearing law enforcement uniforms, returned to Stockfish's residence. It was apparent to the bail agents through shadows and

voices that both a man and a woman were in the house. When the agents knocked on the door, no one answered but the lights were turned off quickly and the television volume was turned up. Runningfisher therefore called the landlord, Ms. Bratcher, who arrived approximately twenty minutes later with keys to the residence. While she waited in the car the two agents entered the home. Runningfisher testified that he and Longshaw loudly announced their entry and their identities at which time Stockfish came from another room. She asked if they were armed—which they were not—and asked to see their paperwork. She told the agents that Rookhuizen was not there but the record is unclear whether she asked them to leave. While Longshaw continued talking to Stockfish, Runningfisher walked through the house investigating a noise in a back room. When he opened a bedroom door, he encountered Rookhuizen, who immediately picked up a large revolver, pointed it at Runningfisher and threatened to kill him. Both Runningfisher and Longshaw then walked backward out of the house while Rookhuizen kept the gun on them. Stockfish and Rookhuizen got into a car and quickly drove away while the bail agents called 9-1-1 and reported the incident. Shortly thereafter, an officer who had been dispatched to respond to the incident observed Stockfish's car traveling at a high rate of speed. The officer stopped the car and discovered Rookhuizen was no longer in the vehicle. The officer drove to the only open business between Stockfish's house and where Stockfish was stopped and found Rookhuizen. The officer arrested Rookhuizen on the outstanding warrant.

¶5      Rookhuizen initially was charged with two counts of felony assault with a weapon. During the criminal proceedings before the District Court, Rookhuizen filed a motion to suppress the evidence that he had held the bail officers at gunpoint. He argued that the bail

3

agents were unlawfully in Stockfish's house and therefore any evidence obtained during their illegal presence should be suppressed. The District Court denied the motion. Preserving his right to appeal the District Court's denial of his suppression motion, Rookhuizen ultimately entered a plea of guilty to criminal endangerment.

## STANDARD OF REVIEW

¶6 We review a district court's denial of a motion to suppress to determine whether the district court's findings of fact are clearly erroneous and whether the district court's interpretation and application of the law is correct. *State v. Clifford*, 2005 MT 219, ¶ 25, 328 Mont. 300, ¶ 25, 121 P.3d 489, ¶ 25.

## DISCUSSION

¶7 *Did the District Court err in denying Rookhuizen's Motion to Suppress?*

¶8 Rookhuizen argued to the District Court that the bond agents illegally entered Stockfish's home without a warrant and therefore he was justified in defending himself with deadly force. He maintained that all evidence resulting from the unlawful entry should be suppressed. The District Court concluded that suppression of the evidence was not required. Relying on *State v. Christensen*, 244 Mont. 312, 797 P.2d 893 (1990), the court explained that the protections of the Fourth Amendment to the U.S. Constitution and Article II, § 10 of the Montana Constitution protect citizens from government action only, and not the actions of private citizens. The court continued that even if the bail agents' actions could be considered state action, (assuming solely for argument's sake that these bond agents were essentially deputized sheriffs), the evidence need not be suppressed because it was not incriminating evidence of some other crime; rather, it was a violent crime perpetrated against

4

the agents. The District Court also cited Montana's common law principle that "a citizen is not privileged to use self-defense against a police officer to resist an arrest, even if it is invalid one." The court determined that the State had alleged sufficient facts to warrant a trial; therefore, Rookhuizen could present his case to a jury. After this ruling, Rookhuizen entered a guilty plea, reserving his appeal on the suppression issue.

¶9 On appeal, Rookhuizen again argues the unlawful nature of the bail agents' entry and presence in Stockfish's house and his right to suppression of the incriminating evidence obtained therein. He maintains that the agents were state actors, thus requiring consent or a search warrant. He argues in the alternative that if they were not state agents, then as private citizens operating under the citizens' arrest authority, they needed probable cause or exigent circumstances—neither of which were present at the time of entry.

¶10 The State counters that under *State v. Courville*, 2002 MT 330, 313 Mont. 218, 61 P.3d 749 and *State v. Ottwell*, 239 Mont. 150, 779 P.2d 500 (1989), the District Court correctly denied Rookhuizen's motion to suppress. The State also opines that we need not address Rookhuizen's questions relating to the scope of authority available to bail agents nor his arguments that the agents required consent, a search warrant, probable cause or exigent circumstances prior to entering the residence, as these arguments are immaterial to our determination of the correctness of the District Court's action.

¶11 In *Courville*, two officers in separate cars were patrolling an area where there had been reports of underage drinking. Upon coming across a party they were told that two trucks had recently left and possibly contained underage individuals who had been drinking. A short time later, two trucks pulled onto the main road where the officers were also

5

traveling. The officers pursued them. The trucks took different directions and a single officer followed each of them. One truck, driven by Courville, ultimately stopped. The officer approached and removed Courville from the truck. While a pat-down search was being conducted, Courville struck the officer and delivered numerous damaging blows to his head and face. He then obtained the officer's gun and struck him with it before fleeing the scene. Courville was apprehended a few hours later.

¶12 At his trial, Courville argued that because the officer did not have particularized suspicion to stop him, the stop was unlawful and evidence of the incident must be suppressed, and the charges dismissed. Among other things, the State countered that the evidence was properly admitted because criminal conduct committed in response to a Fourth Amendment violation is admissible.

¶13 We agreed with the State. Reaffirming *Ottwell*, a case with a similar fact pattern in which the defendant pointed a gun at state officials who allegedly improperly entered her hotel room without a search warrant, we held that Courville's attack on the officer was an unlawful response regardless of whether the officer had violated his federal or state constitutional rights. We continued that excluding evidence of his criminal conduct "would simply encourage violence towards law enforcement officers attempting to do their duties in the field." *Courville*, ¶ 24. We concluded that the evidence of Courville's criminal conduct committed against the officer was "so attenuated from the claimed improper investigatory stop that the evidence of his conduct lost its primary constitutional taint—if, indeed there ever was any—and that the evidence is, therefore, not subject to the exclusionary rule."

*Courville*, ¶ 25. We therefore affirmed the District Court's denial of Courville's motion to suppress the evidence.

¶14 The analyses in *Courville* and *Ottwell* apply to this case. As determined by the District Court, it is not necessary to decide whether the bail officers' actions constituted state action or to define the scope of their authority. It is sufficient to note that if the bail agents were not state actors, suppression is not required. Moreover, even if the bail agents could be considered state actors, under *Ottwell* and *Courville*, Rookhuizen's response to their presence was unlawful and therefore not subject to the exclusionary rule.

## CONCLUSION

¶15 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ JOHN WARNER