FILED

September 9 2008

*Ed Smith*

CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0540

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2008 MT 311

~~FILED~~

SEP   9 2008

*Ed  Smith*

CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF B.A.M.,

A Youth.

APPEAL FROM:   District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DJ 2006-39
Honorable David Rice, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John Heenan, Heenan Law Firm, Billings, Montana

For Appellee:

Hon. Mike McGrath, Attorney General; J. Stuart Segrest, Assistant Attorney General, Helena, Montana

Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs:  July 2, 2008

Decided:  September 9, 2008

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 B.A.M. appeals from an order of the Tenth Judicial District Youth Court (Youth Court), Fergus County, denying his motion to suppress. We affirm.

¶2 B.A.M. presents the following issue for review:

¶3 Whether the Youth Court properly determined that exigent circumstances existed sufficient to justify a warrantless entry into the subject home.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 Fergus County sheriff's deputies received a tip on November 5, 2006, regarding an underage drinking party at the Landrau ranch about 25 miles outside of Lewistown, Montana. The deputies arrived at about 1:00 a.m. and observed the ongoing party through the open windows of the house. The deputies saw several seemingly underage people inside the house and a large quantity of liquor bottles and beer cans.

¶5 The party-goers apparently noticed the deputies and their car outside the house. They began rushing around the house, attempting to hide the beverage containers. People also began running out of the house into the darkness. The deputies, still outside the house, demanded to speak to a homeowner. They received no response. The deputies then called dispatch to report their observations and to discuss whether to pursue a telephonic warrant to search the house. The deputies ultimately entered the house without having obtained the warrant. The deputies apprehended between 12 and 15 underage drinkers, including B.A.M.

¶6 The deputies gathered the underage drinkers outside the house and began issuing

2

minor in possession (MIP) tickets. B.A.M. refused to stand with the other offenders while they received their tickets. B.A.M. instead ran back into the house and said that "if he was going to get a ticket, he was going to be drunk." The deputies then observed B.A.M. "grabbing every bottle he could find . . . and chugging." B.A.M. further resisted arrest by reportedly fighting, and injuring, one of the deputies on the scene.

¶7     The State initially charged B.A.M. with assault, obstructing a peace officer, resisting arrest, and disorderly conduct. The State later added the MIP charge. B.A.M. moved to suppress the evidence on the grounds that the Fergus County deputies had conducted an illegal warrantless search of the Landrau house. B.A.M. argued in relevant part that exigent circumstances did not exist to justify the warrantless search. B.A.M. asserted that absent a valid warrant the State legally could not sustain any of the charges against him.

¶8     The Youth Court denied the motion. The Youth Court determined that exigent circumstances existed to justify the search based on several facts. The deputies observed the underage drinkers before entering the house. The underage drinkers fled from the house as the deputies approached. The location was remote and the weather was cold. The Youth Court reasoned that the deputies wisely entered the house to apprehend the underage drinkers in order both to preserve evidence and to ensure that the youths did not risk injury by escaping into the cold. The Youth Court concluded that the deputies would have been delayed too long had they waited to obtain a warrant. B.A.M. pleaded "true" to all charges, while reserving his right to appeal the evidentiary issue. B.A.M. appeals.

## STANDARD OF REVIEW

¶9 We review a district court's denial of a motion to suppress to determine whether the district court's findings of fact are clearly erroneous and whether the district court's interpretation and application of the law is correct. *State v. Rookhuizen*, 2007 MT 312, ¶ 6, 340 Mont. 148, ¶ 6, 172 P.3d 1257, ¶ 6.

## DISCUSSION

¶10 B.A.M. argues principally that exigent circumstances did not exist to justify the deputies' warrantless entry of the Landrau house. We need not address B.A.M.'s exigent circumstances argument, however, as evidence of the crimes with which the State charged B.A.M. was admissible regardless of whether the deputies had conducted an illegal warrantless search of the Landrau house.

¶11 Evidence obtained through search and seizure in violation of the Fourth Amendment constitutes "fruit of the poisonous tree" that falls under the exclusionary rule. *State v. Therriault*, 2000 MT 286, ¶ 57, 302 Mont. 189, ¶ 57, 14 P.3d 444, ¶ 57. Montana recognizes three exceptions to the "fruit of the poisonous tree doctrine." *Therriault*, ¶ 58. The evidence will be admissible notwithstanding a Fourth Amendment violation if it is (1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence that inevitably would have been discovered apart from the constitutional violation. *Therriault*, ¶ 58 (citing *State v. New*, 276 Mont 529, 536, 917 P.2d 919, 923 (1996)).

¶12 The State argues that the evidence was sufficiently attenuated from the alleged constitutional violation as to remove its primary taint as B.A.M. committed the charged offenses in response to the deputies' presence after the deputies had entered the Landrau house. The State relies on *Rookhuizen*, ¶ 13, for the proposition that this Court deems admissible evidence of offenses committed in response to conduct that violates the Fourth Amendment to the U.S. Constitution. *Rookhuizen* concerned two bail agents' warrantless entry into the defendant's girlfriend's house. The defendant responded to the warrantless entry by threatening the bail agents with a gun. *Rookhuizen*, ¶ 4. The State charged the defendant with assault. The defendant moved to suppress all evidence obtained after the illegal entry. *Rookhuizen*, ¶ 5. This Court relied upon *State v. Courville*, 2002 MT 330, 313 Mont. 218, 61 P.3d 749, and *State v. Ottwell*, 239 Mont. 150, 779 P.2d 500 (1989), in affirming the trial court's denial of Rookhuizen's motion to suppress.

¶13 The Court determined that offenses committed in response to a Fourth Amendment violation constituted "an unlawful response regardless of whether the [state actor] had violated [the defendant's] federal or state constitutional rights." *Rookhuizen*, ¶ 13. The Court reasoned that evidence of criminal conduct committed against an officer in response to an improper search or stop is so attenuated from the claimed improper search or stop that it "'los[es] its primary constitutional taint . . . and that the evidence is, therefore, not subject to the exclusionary rule.'" *Rookhuizen*, ¶ 13 (quoting *Courville*, ¶ 25). The Court further noted

that failure to exclude such evidence could have the unwanted effect of encouraging violence toward state actors in response to illegal stops and searches. *Rookhuizen*, ¶ 13.

¶14 Similar circumstances existed in *Courville*, where the defendant assaulted and severely injured a police officer who allegedly had stopped the defendant illegally. *Courville*, ¶ 12. The defendant moved to suppress evidence of the assault and related crimes on the grounds that the officer had lacked particularized suspicion for the stop. *Courville*, ¶ 12. The Court affirmed the trial court's denial of the defendant's motion to suppress as "the exclusionary rule does not apply to evidence of criminal conduct committed in response to a claimed Fourth Amendment violation." *Courville*, ¶ 23.

¶15 The Court reached the same conclusion in *Ottwell*. Two state officers entered the defendant's motel room without a warrant. The defendant threatened the officers with a handgun and escaped out the window. *Ottwell*, 239 Mont. at 153, 779 P.2d at 502. The Court affirmed the trial court's denial of the motion to suppress evidence of the defendant's independent criminal conduct that occurred in response to the unconstitutional search and seizure. *Ottwell*, 239 Mont. at 154, 779 P.2d at 502. The Court determined that "[s]uch evidence does not constitute the 'fruit of the poisonous tree' and thus the purpose of the exclusionary rule-to protect a person from unreasonable searches or seizures through suppression of evidence-would not be accomplished by its application in such a situation." *Ottwell*, 239 Mont. at 154, 779 P.2d at 502.

6

¶16 The criminal conduct with which the State charged B.A.M.--the assault, obstructing a peace officer, resisting arrest, disorderly conduct, and the MIP--likewise constituted criminal conduct committed in response to an alleged Fourth Amendment violation. *Rookehuizen*, ¶ 13; *Courville*, ¶ 23; *Ottwell*, 239 Mont. at 153, 779 P.2d at 502. The charged offenses occurred in the deputies' presence after, and in response to, the deputies' alleged illegal entry into the Landrau house. B.A.M. also committed illegal violent acts against state actors when he resisted arrest and assaulted a deputy, like the defendants in *Rookhuizen*, *Courville*, and *Ottwell*. *Rookehuizen*, ¶ 13; *Courville*, ¶ 23; *Ottwell*, 239 Mont. at 153, 779 P.2d at 502. The evidence of B.A.M.'s criminal conduct committed against the deputies was "'so attenuated from the claimed [Fourth Amendment violation] that the evidence of his conduct lost its primary constitutional taint'" in light of the fact those crimes occurred after the alleged Fourth Amendment violation. *Rookhuizen*, ¶ 13 (quoting *Courville*, ¶ 25). The evidence of those crimes is not subject to the exclusionary rule. *Rookehuizen*, ¶ 13; *Courville*, ¶ 23; *Ottwell*, 239 Mont. at 154, 779 P.2d at 502.

¶17 B.A.M. attempts to distinguish *Rookhuizen*, *Courville*, and *Ottwell* on the grounds that the record fails to reveal the exact nature of B.A.M.'s violent conduct after contact with the deputies. The State's amended petition for youth hearing and a minute entry created for the hearing in which B.A.M. pleaded true to all the charges against him constitute the only records of B.A.M.'s assault. Both documents fail to describe the conduct underlying this charge. B.A.M. argues that the lack of specificity in the record regarding his violent conduct

precludes the court from analogizing to *Rookhuizen*, *Courville*, and *Ottwell* as those decisions described the post-arrest violence in detail.

¶18 B.A.M. fails to cite any authority for this proposition. B.A.M. also does not dispute that he committed violence toward a state actor. He seems to assert that the nature of a defendant's violent conduct ought to be known in order to apply the rule. B.A.M. fails to explain, however, why the nature of his violent conduct against the state actor should bear any significance in our application of the rule that offenses committed in response to a Fourth Amendment violation are not covered by the exclusionary rule.

¶19 This Court has not distinguished the nature of the violent crime for purposes of this rule. The defendants in *Ottwell* and *Rookehuizen* threatened state actors with guns, but did not cause physical injury. *Ottwell*, 239 Mont. at 153, 779 P.2d at 502; *Rookhuizen*, ¶ 4. The defendant in *Courville* punched and pistol whipped the state actor to the extent of breaking the state actor's nose and causing loss of vision in one eye. *Courville*, ¶¶ 10-11. The Court affirmed that all of this conduct constituted criminal conduct sufficient to invoke the exception. *Rookehuizen*, ¶ 13; *Courville*, ¶ 23; *Ottwell*, 239 Mont. at 154, 779 P.2d at 502. The nature of the criminal conduct played no role in the Court's analyses.

¶20 B.A.M.'s suggestion that the degree or nature of the violent conduct ought to play a role in this rule defeats the policies that undergird the rule. The Court in *Courville* explained that excluding evidence of a defendant's criminal conduct in response to a Fourth Amendment violation "would simply encourage violence towards law enforcement officers

8

attempting to do their duties in the field." *Courville*, ¶ 24. To distinguish between degrees of violence perpetrated toward state actors in these circumstances would encourage certain kinds of violence, but not others. We read this policy as discouraging all violence against state actors.

¶21 B.A.M. also asserts that testimony relating to B.A.M.'s running back into the house to chug alcohol represents the only detailed evidence of B.A.M.'s criminal conduct. B.A.M. contends that this evidence is insufficient to invoke this Court's rule. B.A.M correctly points out that *Rookhuizen*, *Courville*, and *Ottwell* involved violent crimes. B.A.M. argues that the exclusionary rule must apply to non-violent offenses committed in response to a Fourth Amendment violation.

¶22 Evidence is admissible notwithstanding a Fourth Amendment violation when it is obtained from an independent source. *Therriault*, ¶ 58. The independent source doctrine typically arises in more complex circumstances than these. This Court determined in *State v. Dasen*, 2007 MT 87, ¶¶ 18-22, 337 Mont. 74, ¶¶ 18-22, 155 P.3d 1282, ¶¶ 18-22, that evidence could be admitted under the independent source doctrine when a second lawful warrant obtained evidence after a first warrant had violated the Fourth Amendment. The Court in *Therriault* concluded that evidence could be admitted under the independent source doctrine after an officer illegally had searched the defendant's house twice, in light of the fact that the officer had received the same incriminating evidence that he obtained in the illegal search independently from the defendant's sister. *Therriault*, ¶¶ 61-64.

¶23 Much simpler facts exist here. The deputies allegedly conducted an illegal warrantless search of the Landrau house that resulted in B.A.M. receiving an MIP. B.A.M. provided the deputies with an independent source for evidence of the MIP, however, when he began defiantly chugging alcohol in the deputies' presence after their alleged illegal entry. B.A.M. certainly could have argued that evidence of his MIP should be excluded had he ceased engaging in illegal activity after the warrantless entry. B.A.M.'s decision to commence anew that same criminal conduct after the illegal entry and in the deputies' presence, however, constitutes an independent source that excludes the evidence from the "fruit of the poisonous tree doctrine." *Therriault*, ¶ 58.

¶24 The Youth Court's denial of B.A.M.'s motion to suppress did not constitute clear error despite the fact that the court reached this conclusion on different grounds. *Rookhuizen*, ¶ 6. We will affirm a trial court when it reaches the correct result even if for the wrong reason. *Courville*, ¶ 19. The parties sufficiently developed the factual record below to account for the separate theory upon which we base our conclusion even though neither the parties, nor the Youth Court, contemplated this theory. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

10

John Warner
_____

Jim Rice
_____

_____
Justices

11