

FILED

Jun 23 2015, 1:31 pm

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.P.,

*Appellant-Respondent*,

v.

State of Indiana,

*Appellee-Petitioner*.

June 23, 2015

Court of Appeals Case No.
49A02-1411-JV-789

Appeal from the Marion Superior
Court

The Honorable Geoffrey Gaither,
Magistrate

The Honorable Marilyn A. Moores,
Judge

Case No. 49D09-1407-JD-1720

**Vaidik, Chief Judge.**

# Case Summary

1. Many state and federal courts have applied an exception to the Fourth

   Amendment's exclusionary rule called the new-crime exception. This

exception provides that notwithstanding a strong causal connection in fact between an illegal search or seizure by law enforcement and a defendant's response, if the defendant's response is itself a new and distinct crime, then evidence of the new crime is admissible notwithstanding the prior illegality. Because the purpose of the exclusionary rule—to deter police misconduct—is not advanced by suppressing evidence of a new crime committed by a defendant after an illegal search or seizure, we apply the new-crime exception to the Fourth Amendment's exclusionary rule. And we also conclude that this exception applies equally to the Indiana Constitution. Accordingly, evidence that C.P. battered a police officer after being illegally seized is admissible. We therefore affirm C.P.'s adjudication as a juvenile delinquent for committing what would be Level 6 battery against a public-safety official if committed by an adult.

# Facts and Procedural History

[1] On July 14, 2014, C.P. attended Holy Spirit Festival at Holy Spirit Catholic Church on East 10th Street in Indianapolis. Indianapolis Metropolitan Police Department Officer Jeffrey Wood was working as a security guard for the church.[1] Officer Wood's responsibilities included enforcing the church's

---

[1] Officer Wood, who was wearing an IMPD uniform, explained that although he was off-duty, "as a sworn law enforcement officer for the City of Indiana[polis], I am subject to enforce any laws whether I am technically on the clock with the city or not." Tr. p. 4.

policies on dress and language. One policy provided that "no underclothing be exhibited in a public fashion where the other people would be forced to observe their undergarments." Tr. p. 5. Another policy prohibited "loud noises and obscenities." *Id.* at 7. Officer Wood was authorized to deal with violators "as deemed necessary." *Id.* at 5.

[2] Officer Wood saw C.P. and some of his friends walking around the festival. C.P. was wearing his pants down below his "buttocks exposing [his] underwear to the patrons of the festival." *Id.* When Officer Wood asked C.P. to pull up his pants, C.P. nodded his head and pulled them up.

[3] About an hour later, Officer Wood again saw C.P., whose "pants [were] down exposing his undergarments to the patrons of the . . . festival." *Id.* at 6. Officer Wood asked C.P. for a second time to pull up his pants. C.P. briefly turned around but then walked away from Officer Wood. As C.P. walked away, he said something to Officer Wood, but Officer Wood could not hear him. So, Officer Wood told C.P. that if he wanted to talk to him, C.P. needed "to turn around and speak to [him]." *Id.* Using profanity, C.P. told Officer Wood that he "didn't have the right to follow" and "talk to him." *Id.* Officer Wood told C.P., who was "getting more and more agitated and louder," "to leave the festival." *Id.* But because C.P. continued to curse and started walking deeper into the crowd, Officer Wood "put [his] left hand on [C.P.'s] right shoulder to sort of steer him" off church property. *Id.* at 7; *see also id.* at 17 ("STATE: When you placed your hand on the respondent's shoulder, what was your goal at that time? WITNESS: To guide him through the crowd and off the

property."). In response, C.P. threw his arm in the air and said "don't put your mother fu\*\*ing hands on me . . . ." *Id.* at 23. Because C.P. was getting more agitated and "women and children [were] around," Officer Wood tried "to move [C.P.] through the crowd quicker to get him off of the property." *Id.* In order to do so, Officer Wood put his hand on C.P.'s shoulder a second time, at which point C.P. "threw his hand in the air, spun around[,] took up a fighting stance[,] and shoved [Officer Wood] in [the] chest." *Id.* Officer Wood "went backwards" and had to regain his footing. *Id.* at 24. Officer Wood arrested C.P. for battery.

[4] The State filed a petition alleging that C.P. was a delinquent child for committing what would be Level 6 battery against a public-safety official if committed by an adult.[2] At the fact-finding hearing, defense counsel argued that when Officer Wood put his hand on C.P.'s shoulder, he was illegally seized because "there [was] no legal reason for [C.P.] to be stopped." *Id.* at 9, 18. Accordingly, defense counsel moved to suppress everything that occurred after Officer Wood put his hand on C.P.'s shoulder. Although initially granting C.P.'s motion to suppress, the juvenile court later reversed course and ruled that Officer Wood's act of putting his hand on C.P.'s shoulder was not a "stop" within the meaning of the Fourth Amendment. *Id.* at 22. Thereafter, the juvenile court entered a true finding for battery. At the dispositional hearing,

---

[2] The State also alleged that C.P. committed what would be Class A misdemeanor resisting law enforcement if committed by an adult, but the juvenile court entered a not-true finding on this count. Therefore, we do not discuss this charge or its underlying facts.

the juvenile court adjudicated C.P. a delinquent child but closed the case and discharged C.P. and his mother.

[5] C.P. now appeals.

# Discussion and Decision

[6] C.P. contends that he was illegally seized when Officer Wood put his hand on C.P.'s shoulder to steer him off church property and, therefore, "the resulting evidence regarding the battery of Officer Wood is inadmissible" pursuant to the exclusionary rule. Appellant's Br. p. 6. He raises this issue under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

# I. Seizure

[7] C.P. argues that because there was no concern that a crime had occurred or was about to occur, he was illegally seized when Officer Wood put his hand on C.P.'s shoulder to steer him off church property.

## A. United States Constitution

[8] First, we address whether C.P. was illegally seized under the United States Constitution. The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures, and this protection has been extended to the states through the Fourteenth Amendment. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). The fundamental purpose of the Fourth

Amendment is "to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Here, the State does not dispute that wearing saggy pants and cursing does not create reasonable suspicion that a crime has occurred or is about to occur. *See* Tr. p. 16 (Officer Wood testifying that he was not investigating any delinquent activity by C.P.).

[9] The Fourth Amendment's requirement that searches and seizures be founded upon an objective justification governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. *United States v. Mendenhall*, 446 U.S. 544, 551 (1980). Accordingly, if Officer Wood seized C.P. when he put his hand on C.P.'s shoulder, Officer Wood's conduct was constitutional only if he reasonably suspected C.P. of criminal activity. *See id.* at 551-52. "But obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Id.* at 552 (quotation omitted). Rather, it is "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . that a 'seizure' has occurred." *Id.* (quotation omitted). "The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Examples of circumstances that might indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, *some physical touching of the person of the citizen*, or the use of language or tone of voice indicating that compliance with the officer's request might be

compelled." *Mendenhall*, 446 U.S. at 554-55 (emphasis added). "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555.

[10] Here, the evidence shows that Officer Wood "put [his] left hand on [C.P.'s] right shoulder to sort of steer him" off church property. Tr. p. 7; *see also id.* at 17 ("STATE: When you placed your hand on the respondent's shoulder, what was your goal at that time? WITNESS: To guide him through the crowd and off the property."). Officer Wood put his hand on C.P.'s shoulder a second time when he tried "to move [C.P.] through the crowd quicker to get him off of the property." *Id.* at 23. We find that C.P. was seized under the Fourth Amendment because Officer Wood twice put his hand on C.P.'s shoulder and restrained his movement by trying to guide him off church property. And because Officer Wood did not reasonably suspect C.P. of any criminal activity, the seizure was illegal.

## B. Indiana Constitution

[11] We reach the same conclusion under the Indiana Constitution. The language of Article 1, Section 11 of the Indiana Constitution mirrors the Fourth Amendment's protections against unreasonable searches and seizures. *Trowbridge v. State*, 717 N.E.2d 138, 143 (Ind. 1999). However, the tests for determining a rights violation differ for the state and federal provisions. *Id.* This is because the Indiana Constitution has "unique vitality, even where its

words parallel federal language." *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind. 2002); *see also Shotts v. State*, 925 N.E.2d 719, 726 (Ind. 2010). When evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. *Gerschoffer*, 763 N.E.2d at 965. This determination turns on a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law-enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[12] Here, there was no concern, suspicion, or knowledge that any criminal violation had occurred. *See* Tr. p. 16. Rather, C.P. was wearing baggy pants and cursing in violation of church policy. Although the degree of intrusion from a brief investigatory stop is slight, the extent of law-enforcement needs in this case was non-existent. Officer Wood, an IMPD officer, was working as a security guard for the church and enforcing the church's policies on dress and language. Balancing these factors, we conclude that C.P. was illegally seized under Article 1, Section 11 when Officer Wood twice put his hand on C.P.'s shoulder and restrained his movement by trying to guide him off church property.

# II. Exclusionary Rule

Because he was illegally seized, C.P. argues that the evidence of his battery of Officer Wood is inadmissible pursuant to the exclusionary rule. *See* Appellant's Br. p. 6.

## A. United States Constitution

First, we address the exclusionary rule under the United States Constitution. The exclusionary rule "is a judicially created remedy designed to safeguard" the right of the people to be free from unreasonable searches and seizures. *United States v. Calandra*, 414 U.S. 338, 348 (1974). The fact that a Fourth Amendment violation has occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. *Herring v. United States*, 555 U.S. 135, 140 (2009). Indeed, "exclusion 'has always been our last resort, not our first impulse.'" *Id.* (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

To trigger the exclusionary rule, the police conduct must be sufficiently deliberate that exclusion can meaningfully deter it and sufficiently culpable that such deterrence is worth the price paid by the justice system. *Id.* at 144. That is, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct or, in some circumstances, recurring or systemic negligence. *Id.*

Because the exclusionary rule only applies when the benefits of deterrence outweigh the social costs of excluding the evidence—such as setting the guilty free and the dangerous at large, *id.* at 141; *Hudson*, 547 U.S. at 591—the United States Supreme Court has identified several exceptions to the exclusionary rule. For example, the United States Supreme Court has ruled that the exclusionary

rule does not apply when police act in objectively reasonable reliance on a subsequently invalidated search warrant, *United States v. Leon*, 468 U.S. 897, 922 (1984) (good-faith exception), or when the causal connection between the Fourth Amendment violation and the evidence objected to is "remote," *Hudson*, 547 U.S. at 593 (attenuation doctrine). The exclusionary rule also does not apply when the evidence in question would inevitably have been discovered without reference to the police error or misconduct, *Nix v. Williams*, 467 U.S. 431, 448 (1984) (inevitable-discovery doctrine), or when a later, lawful seizure is genuinely independent of an earlier, tainted one, *Murray v. United States*, 487 U.S. 533, 542 (1988) (independent-source doctrine).

[17] But there is another exception to the exclusionary rule that many federal and state courts have applied under the Fourth Amendment: the new-crime exception. Indiana courts have yet to directly address whether we, too, should apply the new-crime exception under the Fourth Amendment.[3] Professor LaFave discusses this exception in his treatise on the Fourth Amendment:

> On occasion, when the police conduct an illegal arrest or an illegal search, this will prompt the person arrested or subjected to the search to react by committing some criminal offense. He might attack the arresting or searching officer, flee from that officer, attempt to bribe him, threaten the officer with harm should he testify against him,

---

[3] Although we have never explicitly applied the new-crime exception to the Fourth Amendment's exclusionary rule, this topic has surfaced in several Indiana cases. *See, e.g.*, *State v. Owens*, 992 N.E.2d 939, 943 (Ind. Ct. App. 2013), *trans. denied*; *Cole v. State*, 878 N.E.2d 882, 888 (Ind. Ct. App. 2007), *abrogated on other grounds by Gaddie v. State*, 10 N.E.3d 1249 (Ind. 2014); *Ronco v. State*, 840 N.E.2d 368, 376 (Ind. Ct. App. 2006), *issue summarily aff'd by Ronco v. State*, 862 N.E.2d 257, 259 n.1 (Ind. 2007); *Dennis v. State*, 736 N.E.2d 300, 303 (Ind. Ct. App. 2000), *reh'g denied*.

> attempt to destroy evidence, or make some criminal misrepresentation in an effort to bring the incident to a close. In such cases, courts are confronted with the question of whether evidence of this new crime (or other evidence discovered after it) must be suppressed as a fruit of the prior illegal arrest or search.

6 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 11.4(j) (5th ed. 2012) (footnotes omitted). LaFave explains that in cases where the response has been a physical attack or threat of a physical attack on the officer who made the illegal arrest or search, "courts have . . . held that the evidence of this new crime (or, other evidence discovered *after* the 'intervening circumstances' of a new crime) is admissible." *Id.* (footnotes omitted). In fact, it "appears to be a nearly universal rule in American jurisdictions that when a suspect responds to an unconstitutional search or seizure by a physical attack on the officer, evidence of this new crime is admissible [under the Fourth Amendment] notwithstanding the prior illegality." *State v. Lusby*, 198 P.3d 735, 738 (Idaho Ct. App. 2008); *see also Brown v. City of Danville*, 606 S.E.2d 523, 530 (Va. Ct. App. 2004) ("[F]ederal and state courts alike have uniformly rejected the argument that trial courts should suppress evidence relating to [a defendant's] violence or threatened violence toward police officers subsequent to an unlawful search or seizure or a warrantless entry." (quotation omitted)).

[18]     For example, in *State v. Brocuglio*, 826 A.2d 145 (Conn. 2003), the defendant threatened to release his dog when police officers, without a warrant, entered his driveway and fenced-in backyard to ticket his unregistered and abandoned cars pursuant to city ordinance, and an altercation ensued. On appeal to the Supreme Court of Connecticut, the State argued that "the defendant's conduct

constituted a new crime subsequent to the unlawful police entry and that [the Connecticut Supreme Court] should apply the new[-]crime exception to the exclusionary rule adopted by many other jurisdictions." *Id.* at 150-51.

[19] The Connecticut Supreme Court decided as a matter of first impression the "issue of whether a new crime committed in response to an unlawful police entry into one's residence is attenuated sufficiently to break the chain of causation from the unlawful entry." *Id.* at 151. The court acknowledged that many jurisdictions, "both federal and state, have considered and adopted a new[-]crime exception to the [Fourth Amendment's] exclusionary rule." *Id.* at 152 (citing federal cases from the 1st, 4th, 5th, 7th, 8th, 9th, 10th, and 11th Circuits as well as state cases from Florida, Illinois, Massachusetts, Minnesota, New York, North Carolina, North Dakota, Oregon, South Dakota, Washington, and Washington, D.C.).[4] In deciding whether to adopt the new-crime exception to the Fourth Amendment's exclusionary rule, the Connecticut Supreme Court found persuasive the rationale that "the limited objective of the exclusionary rule is to deter unlawful police conduct—not to provide citizens with a shield so as to afford an unfettered right to threaten or harm police officers in response to the illegality." *Id.* The Connecticut Supreme Court

---

[4] More states should be added to this list, including Alaska, *Elson v. State*, 659 P.2d 1195 (Alaska 1983); Idaho, *see Lusby*, 198 P.3d 735; Kentucky, *see Commonwealth v. Johnson*, 245 S.W.3d 821 (Ky. Ct. App. 2008); Maine, *see State v. Boilard*, 488 A.2d 1380 (Me. 1985); Montana, *see State v. Ottwell*, 779 P.2d 500 (Mont. 1989); New Mexico, *see State v. Travison B.*, 149 P.3d 99 (N.M. Ct. App. 2006); Texas, *see State v. Mitchell*, 848 S.W.2d 894 (Tex. Crim. App. 1993); and Virginia, *see Brown*, 606 S.E.2d 523.

specifically agreed with the Seventh Circuit in *United States v. Pryor*, in which Judge Easterbrook said:

> Police do not detain people hoping that they will commit new crimes in their presence; that is not a promising investigative technique, when illegal detention exposes the police to awards of damages. Thus the gains from extending the rule to exclude evidence of fresh crimes are small, and the costs high. If the rule were applied rigorously, suspects could shoot the arresting officers without risk of prosecution. An exclusionary rule that does little to reduce the number of unlawful seizures, and much to increase the volume of crime, cannot be justified.

32 F.3d 1192, 1196 (7th Cir. 1994); *see also United States v. Bailey*, 691 F.2d 1009, 1016-17 (11th Cir. 1982) ("[N]otwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime. . . . A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct."). Accordingly, the Connecticut Supreme Court concluded that "in light of the defendant's ability to obtain relief to protect his constitutional rights[5] and the public[-]policy concerns regarding escalating violence, we hereby adopt the new[-]crime

---

[5] The Connecticut Supreme Court noted that "there already exist legal remedies available to victims of unlawful police actions." *Brocuglio*, 826 A.2d at 153. For instance, the court noted that "the defendant in the present case properly could have invoked the exclusionary rule to suppress the evidence regarding the vehicles that the police had obtained while unlawfully present in the defendant's backyard." *Id.*

exception to the [Fourth Amendment's] exclusionary rule." *Brocuglio*, 826 A.2d at 153.

[20] Like the many federal and state courts before us, we agree that the purpose of the Fourth Amendment's exclusionary rule—to deter police misconduct—is not advanced by suppressing evidence of a new crime committed by the defendant after an illegal search or seizure. We therefore hold that notwithstanding a strong causal connection in fact between an illegal search or seizure by law enforcement and a defendant's response, if the defendant's response is itself a new and distinct crime, then evidence of the new crime is admissible notwithstanding the prior illegality.[6]

[21] Applying this exception to the facts of this case, we conclude that although C.P. was illegally seized when Officer Wood twice put his hand on C.P.'s shoulder to guide him off church property, C.P. committed a new and distinct crime against Officer Wood when he battered him. Accordingly, the juvenile court properly admitted evidence of C.P.'s commission of battery against Officer Wood.

---

[6] We acknowledge an exception for the crime of resisting law enforcement by fleeing. The Indiana Supreme Court held in *Gaddie v. State* that a defendant is not guilty of resisting law enforcement by fleeing if the police order to stop is unlawful, that is, not supported by probable cause or reasonable suspicion. 10 N.E.3d 1249, 1255 (Ind. 2014).

# B. Indiana Constitution

[22] The focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct. *Mitchell v. State,* 745 N.E.2d 775, 786 (Ind. 2001). "Admissibility [of evidence] is lawful if the court can declare the process reasonable." *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995); *see also id.* at 80 (holding that because the search of the defendant's car was unreasonable, the Indiana Constitution "mandate[d]" that the evidence found as a result of the search be suppressed). Although Indiana's exclusionary rule is different from the Fourth Amendment's exclusionary rule, we do recognize the good-faith exception to the Fourth Amendment's exclusionary rule under the Indiana Constitution. *See Hopkins v. State*, 582 N.E.2d 345, 351 (Ind. 1991) ("[T]he federal good-faith exception enunciated in *United States v. Leon*, [468 U.S. 897 (1984),] has been held applicable to the prohibition of unreasonable search and seizure found in [Article 1, Section 11] of the Indiana Constitution."), *reh'g denied*; *Wendt v. State*, 876 N.E.2d 788, 790-91 (Ind. Ct. App. 2007), *trans. denied*; *see also* Ind. Code § 35-37-4-5 (codification of good-faith exception).[7]

[23] We, however, have not adopted the attenuation doctrine under the Indiana Constitution as it applies to a defendant's commission of a new and distinct

---

[7] Indiana, however, has not adopted two of the other federal exclusionary-rule exceptions under the Indiana Constitution. For example, we have not adopted the inevitable-discovery exception, *see Gyamfi v. State*, 15 N.E.3d 1131, 1138 (Ind. Ct. App. 2014), *reh'g denied*; *Ammons v. State*, 770 N.E.2d 927, 935 (Ind. Ct. App. 2002), *trans. denied*, or the attenuation doctrine, *see Trotter v. State*, 933 N.E.2d 572, 582 (Ind. Ct. App. 2010). We discuss *Trotter* more above.

crime after an illegal search or seizure by law enforcement. In fact, another panel of this Court held in *Trotter v. State* that "the attenuation doctrine as it currently exists as a separate analysis to circumvent the exclusionary rule for Fourth Amendment purposes has no application under the Indiana Constitution." 933 N.E.2d 572, 582 (Ind. Ct. App. 2010), *trans. not sought*. In *Trotter*, the defendant responded to police officers' illegal entry into the pole barn attached to his house by pointing a rifle at them and yelling at them to get out, after which a standoff ensued between the defendant and police for several hours. *Id.* at 578. The *Trotter* Court concluded that the defendant's "act of pointing a firearm was a direct response to the police misconduct, and in no way does [the defendant's] behavior make the police misconduct any more reasonable. . . . [W]e will not hold [the defendant] to a higher standard of reasonableness than the trained professionals who unlawfully invaded his residence in the night." *Id.* at 582; *see also Webster v. State*, 908 N.E.2d 289, 293 (Ind. Ct. App. 2009) ("[W]e are not convinced that after we determine the police acted unreasonably under the Indiana Constitution, we then must determine whether the attenuation doctrine prevents the exclusionary rule from applying, and the State provides no specific argument regarding the application of the attenuation doctrine under the Indiana Constitution. We believe that a defendant's actions during a police encounter are considered as part of the totality of the circumstances in determining whether the police acted reasonably."), *trans. denied*.

We disagree with the *Trotter* Court that evidence of new and distinct crimes committed by a defendant in response to an illegal search or seizure by law enforcement is inadmissible under the Indiana Constitution. Although in some cases the Indiana Constitution "confers greater protections to individual rights than the Fourth Amendment affords," *see Shotts*, 925 N.E.2d at 726, the Indiana Constitution does not compel a different result here. We find the rationale that the other federal and state courts have cited in applying the new-crime exception to the Fourth Amendment's exclusionary rule equally applicable to the Indiana Constitution. That is, if evidence that defendants committed new and distinct crimes in response to illegal searches or seizures by law enforcement were inadmissible, then defendants could attack or shoot arresting officers without risk of prosecution. As the Seventh Circuit explained in *Pryor*, "An exclusionary rule that does little to reduce the number of unlawful seizures, and much to increase the volume of crime, cannot be justified." 32 F.3d at 1196; *see also Lusby*, 198 P.3d at 739 ("In sum, the exclusionary rule does not give the aggrieved individual carte blanche to commit criminal acts against a police officer with impunity merely because the officer erred by conducting an unlawful search or seizure."); *State v. Ottwell*, 779 P.2d 500, 502-03 (Mont. 1989) ("[T]o allow a person whose Fourth Amendment rights were violated to respond with unlimited violence toward[] the violator and then to grant the person immunity via the exclusionary rule, would create intolerable results. Such a ruling would allow, and possibly even encourage, more violence."). Such a rule cannot be justified under the Indiana Constitution either. We therefore hold that the new-crime exception applies to Indiana's

exclusionary rule. Because the juvenile court properly admitted evidence that C.P. battered Officer Wood after he was illegally seized, we affirm C.P.'s adjudication as a juvenile delinquent for committing what would be Level 6 battery against a public-safety official if committed by an adult.

Affirmed.

Kirsch, J., and Bradford, J., concur.