

**FILED**

Sep 08 2017, 5:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.C. & K.C., *Appellants-Respondents,* <br><br> v. <br><br> State of Indiana, *Appellee-Petitioner.* | September 8, 2017 <br><br> Court of Appeals Case No. 49A04-1606-JV-1230 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn Moores, Judge <br><br> The Honorable Gary Chavers, Magistrate <br><br> Trial Court Cause Nos. 49D09-1509-JD-1759 49D09-1511-JD-2031 |

**Brown, Judge.**

[1] In this consolidated appeal, Ki.C. appeals the juvenile court's true findings that he committed delinquent acts which, if committed by an adult, would constitute battery on a public safety official as a level 6 felony and forcibly resisting law enforcement as a class A misdemeanor. Ke.C. appeals the juvenile court's true finding that he committed a delinquent act which, if committed by an adult, would constitute resisting law enforcement as a class A misdemeanor. Ki.C. and Ke.C. (collectively, the "Respondents") raise three issues which we consolidate and restate as whether the juvenile court abused its discretion in admitting certain evidence due to violations of the Respondents' rights under Article 1, Section 11 of the Indiana Constitution. We affirm.

*Facts and Procedural History*

[2] On September 24, 2015, Indianapolis Public Schools Police Department ("IPSP") Officers John Dunker and Christopher Caldwell were on duty at Arsenal Technical High School when Officer Dunker received a radio call about a possible stolen phone. He proceeded to Allen Hall, and faculty member Tony Henderson told him that a female student's "Windows phone" had been stolen and that no one had left the classroom and no one had reentered.[1] Transcript at 4. Officer Dunker proceeded to conduct pat-down searches of the students who were in the classroom by taking one student at a

---

[1] We note that this statement was admitted for the limited purpose of showing why Officer Dunker took the actions he did when he arrived in the classroom.

time out into the hallway and patting down the students' exterior clothing. Soon after, Officer Caldwell arrived to assist with the searches.

[3] After patting down at least one student and not finding the phone, Officer Dunker re-entered the classroom and "was greeted by [Ki.C.] yelling, he is not f------ touching me. He is not touching me, he is not searching me." *Id.* at 10-11. Officer Dunker patted down another student, then came to Ki.C. who remained seated and stated that he would not allow Officer Dunker to search him. Officer Dunker asked Ki.C. to stand, and he refused to do so. After Officer Dunker moved the desk, Ki.C. stood, took his jacket off, and began to walk away, Officer Dunker placed his hand on Ki.C.'s shoulder, and Ki.C. "threw his arm back in an aggressive manor [sic] . . . ." *Id.* Officer Dunker went to grab Ki.C., who then balled his fist and swung it at Officer Dunker several times. Officer Dunker then placed Ki.C. on a ledge in the back of the classroom, and Ki.C. punched Officer Dunker in the ribs with his fist and with a limestone-based trophy. At that point, Officer Dunker took Ki.C. to the ground.

[4] Ke.C., who is Ki.C.'s twin brother, observed Ki.C. and Officer Dunker on the ground, and Officer Caldwell prevented Ke.C. from moving toward them. Ke.C. tried to evade Officer Caldwell, but he was taken to the ground by the officer. During this encounter, Officer Caldwell believed that Ke.C. was hitting him in the leg. Officer Caldwell attempted to place Ke.C. in handcuffs, but Ke.C. kept avoiding the handcuffs by moving his arms and trying to pull away.

Eventually, both Ki.C. and Ke.C. were placed in handcuffs and escorted by the officers to the IPSP office on the Arsenal Tech campus.

[5] On September 25, 2015, the State alleged Ki.C. to be a delinquent child for acts constituting the following crimes if committed by an adult: Count 1, battery against a public safety official as a level 6 felony; Count 2, battery by bodily waste as a level 6 felony; Count 3, battery against a public safety official as a level 6 felony; Counts 4 and 5, intimidation as level 6 felonies; and Count 6, resisting law enforcement as a class A misdemeanor. On November 13, 2015, the State alleged Ke.C. to be a delinquent child for committing two counts of resisting law enforcement which would be class A misdemeanors if committed by an adult.

[6] On March 14, 2016, the juvenile court held a consolidated fact-finding hearing for Ki.C. and Ke.C. Early in the testimony of Officer Dunker, defense counsel asked preliminary questions and made an oral motion to suppress the evidence of the events that occurred after the attempted pat-down search. Defense counsel asked Officer Dunker about the myIPS Student Code of Conduct, and Officer Dunker testified that "these rules are not necessarily over us," that the officers "operate by our own standard operating procedure," and that "we are separate from the school rules." Transcript at 6. After having him read certain provisions contained in the Code of Conduct regarding personal technology devices such as smartphones and student searches, defense counsel moved to suppress his testimony as follows:

The Officer acting in the capacity of a member of the State in his role as a policeman overstepped his authority; in fact, violated both of my client's [sic] Constitutional rights to be free from unlawful searches and seizures. . . . We would ask that everything that occurred after the officer had the idea that he was going to search everyone in the classroom be suppressed and that in fact may result in a dismissal of the charges against both of these boys.

*Id.* at 8-9. The court denied the motion. Counsel again objected during Officer Caldwell's testimony, citing his previous argument, which the court overruled. The court also admitted into evidence as Respondents' Exhibit A the myIPS Student Code of Conduct, which includes provisions regarding personal technology devices such as smartphones and student searches.

[7] The court found Ki.C. delinquent on Counts 1 and 6 for acts which would constitute battery on a public safety official as a level 6 felony and resisting law enforcement as a class A misdemeanor for his actions involving Officer Dunker and entered findings of not true on the other four counts. The court found Ke.C. delinquent on one count of resisting law enforcement, which would be a class A misdemeanor if committed by an adult, for conduct related to Officer Caldwell, and entered a not true finding on the other count. The court entered dispositional orders placing both juveniles on probation.

## *Discussion*

[8] The issue is whether the juvenile court abused its discretion in admitting certain evidence due to violations of the Respondents' rights under Article 1, Section 11 of the Indiana Constitution. The admission and exclusion of evidence is a

matter within the sound discretion of the trial court, and we will review only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[9] Before addressing the merits of the Respondents' arguments, we note the State asserts that the Respondents have waived the issue for failure to make a sufficient contemporaneous objection at the fact-finding hearing. The Respondents state that the issue is properly preserved and that, if this court decides otherwise, it must address the issue as one of ineffective assistance of counsel.

[10] "In order to preserve a claim of trial court error in the admission or exclusion of evidence, it is necessary at trial to state the objection together with the specific ground or grounds therefor at the time the evidence is first offered." *Mullins v. State*, 646 N.E.2d 40, 44 (Ind. 1995) (citations omitted). "Failure to state the specific basis for objection waives the issue on appeal." *Id.*; *see also Lewis v. State*, 755 N.E.2d 1116, 1122 (Ind. Ct. App. 2001) ("Failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error upon appeal."); *G.J. v. State*, 716 N.E.2d 475, 478 (Ind. Ct. App. 1999) ("Where a defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on other grounds, the defendant

waives the suppression claim.") (quoting *Moore v. State*, 669 N.E.2d 733, 742 (Ind. 1996), *reh'g denied*)).

[11] During the testimony of Officer Dunker, defense counsel objected and moved to suppress his testimony, arguing that "[t]he Officer acting in the capacity of a member of the State in his role as a policeman overstepped his authority; in fact, violated both of my client's [sic] Constitutional rights to be free from unlawful searches and seizures." Transcript at 8. He made a similar objection during the testimony of Officer Caldwell. Although defense counsel did not specifically mention Article 1, Section 11 of the Indiana Constitution, the objection was based upon the Respondents' right to be free from unlawful searches and seizures, which is language contained in that constitutional provision. Based on defense counsel's objections, and recognizing that "whenever possible," this Court "prefer[s] to resolve cases on the merits instead of on procedural grounds like waiver," *Hale v. State*, 54 N.E.3d 355, 359 (Ind. 2016) (quoting *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015)), we conclude that the Respondents' arguments on appeal are not waived.

[12] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[13] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). In general, "[w]e consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[14] The Respondents argue that the officers violated their rights under Article 1, Section 11 of the Indiana Constitution by performing a pat-down search of all students in the classroom, arguing there was no suspicion that they had been involved in the purported theft, the degree of intrusion was significant, and the extent of law enforcement needs was minimal. The Respondents acknowledge that, in *C.P. v. State*, 39 N.E.3d 1174 (Ind. Ct. App. 2015), *trans. denied*, another panel of this Court adopted the new-crime exception to the exclusionary rule, and they urge us "not to follow *C.P.* and instead hold the new-crime exception does not apply to challenges under Article 1, Section 11." Appellant's Brief at 14. The State responds that the school-initiated search was reasonable under Article 1, Section 11, and that the officers acted reasonably when attempting to conduct the pat-down search of the Respondents. The State further argues that

the Respondents committed acts constituting new offenses within the new-crime exception to the exclusionary rule as set forth in *C.P.*

[15]     Even assuming the search of the Respondents was not reasonable under the totality of the circumstances, the trial court properly admitted the challenged evidence under the new-crime exception to the exclusionary rule as discussed in *C.P.* In that case the State alleged C.P. was a delinquent child for committing what would be level 6 battery against a public-safety official if committed by an adult. 39 N.E.3d at 1177. On appeal, this Court found that C.P. was seized because a police officer had placed his hand on C.P.'s shoulder to escort him off church property and concluded the seizure was illegal under the Fourth Amendment and under Article 1, Section 11 of the Indiana Constitution. *Id.* at 1178-1179. We observed that many federal and state courts have applied the new-crime exception to the exclusionary rule under the Fourth Amendment and noted Professor LaFave's discussion of the new-crime exception in his treatise:

> On occasion, when the police conduct an illegal arrest or an illegal search, this will prompt the person arrested or subjected to the search to react by committing some criminal offense. He might attack the arresting or searching officer, flee from that officer, attempt to bribe him, threaten the officer with harm should he testify against him, attempt to destroy evidence, or make some criminal misrepresentation in an effort to bring the incident to a close.

*Id.* at 1180 (quoting 6 Wayne R. LaFave, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.4(j) (5th ed. 2012) (footnotes omitted)). The

Court stated that it "appears to be a nearly universal rule in American jurisdictions that when a suspect responds to an unconstitutional search or seizure by a physical attack on the officer, evidence of this new crime is admissible [under the Fourth Amendment] notwithstanding the prior illegality." *Id.* at 1180-1181 (quoting *State v. Lusby*, 146 Idaho 506, 198 P.3d 735, 738 (Idaho Ct. App. 2008), *rev. denied*).

[16] The *C.P.* Court then noted that the focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct, and that, although Indiana's exclusionary rule is different from the Fourth Amendment's exclusionary rule, Indiana courts recognize the good-faith exception to the Fourth Amendment's exclusionary rule under the Indiana Constitution. *Id* at 1182. The Court observed that, although in some cases the Indiana Constitution confers greater protections to individual rights than the Fourth Amendment affords, "the Indiana Constitution does not compel a different result here," that "the rationale that the other federal and state courts have cited in applying the new-crime exception to the Fourth Amendment's exclusionary rule is equally applicable to the Indiana Constitution," and that, "if evidence that defendants committed new and distinct crimes in response to illegal searches or seizures by law enforcement were inadmissible, then defendants could attack or shoot arresting officers without risk of prosecution." *Id.* at 1183. The Court further stated that, "[a]s the Seventh Circuit explained in [*United States v.*] *Pryor*, [32 F.3d 1192 (7th Cir. 1994),] 'An exclusionary rule that does little to reduce the number of unlawful seizures, and much to increase the

volume of crime, cannot be justified,'" *id.* (quoting *Pryor*, 32 F.3d at 1196), and that "[s]uch a rule cannot be justified under the Indiana Constitution either." *Id.* at 1184. The Court held that the new-crime exception applies to Indiana's exclusionary rule and, because the juvenile court properly admitted evidence that C.P. battered the officer after he was illegally seized, affirmed C.P.'s adjudication. *Id.*

[17] In this case, we conclude that the Respondents' actions, which included violence against officers, constituted new and distinct crimes and thus that the evidence of those crimes is admissible pursuant to the new-crimes exception notwithstanding any illegality of the pat-down search. The trial court did not abuse its discretion in admitting evidence of the Respondents' new crimes.

## *Conclusion*

[18] For the foregoing reasons, we affirm the juvenile court's true findings for the Respondents.

[19] Affirmed.

Vaidik, C.J., and Bradford, J., concur.