

FILED

Nov 13 2019, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Courtney L. Staton
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Julio Serrano, <br> *Appellee-Defendant* | November 13, 2019 <br><br> Court of Appeals Case No. 19A-CR-305 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Stephenie LeMay-Luken, Judge <br><br> Trial Court Cause No. 32D05-1702-F3-14 |

**May, Judge.**

[1]     The State appeals the trial court's order granting Julio Serrano's supplemental motion to suppress.  The State raises one issue, which we revise and restate as whether the trial court erred in granting Serrano's supplemental motion to suppress. We reverse and remand.

# Facts and Procedural History[1]

[2]     On the night of February 20, 2017, Brownsburg Police Department Officers responded to a dispatch regarding an armed suspect in a residential neighborhood. The dispatch was later updated to a report of an armed robbery in progress. The dispatch described the suspect as being near a silver Chevrolet Envoy. Officer Corey Sears,[2] who had responded to the dispatch, encountered a witness at the scene. Officer Sears asked the witness what car the suspect was driving, and the witness responded that he did not know. Officer Sears' bodycam had not captured a white Cadillac Escalade, but he radioed that a white Cadillac Escalade left the neighborhood at a high rate of speed. Officer Sears did not relay the speed the vehicle was traveling, the vehicle's plate number, a description of the driver, the number of occupants, or any identifying information about any of the occupants. Officer Sears told another officer at the scene that he did not know if the Cadillac was involved, but he did not convey these doubts over the radio.

[3]     Detective Dirk Fentz and other officers, including Officer Chad Brandon, also responded to the dispatch and heard the information reported by Officer Sears about the white Cadillac. Detective Fentz observed a white Cadillac stopped at a traffic light and pulled his car "nose-to-nose" with the Cadillac. (Tr. Vol. II at 12.) He approached the Cadillac, noticed a female driver and two other people in the

---

[1] We heard oral argument in this case on October 1, 2019, in LaPorte, Indiana. We thank the faculty and staff of LaPorte High School for their hospitality and thank counsel for their able presentations.

[2] Officer Sears did not testify at either suppression hearing. He is no longer employed by the Brownsburg Police Department.

backseat of the vehicle, and ordered the occupants to show their hands. Detective Fentz testified:

> We tried to get them to unlock and exit the vehicle. As we did, the doors became unlocked, Mr. Serrano began to exit the back of the vehicle, pushed between me and Officer [Jonathan] Flowers and then ran across Odell [Street] pulling a firearm.

(*Id.* at 14.) Serrano began to turn toward the officers, started to fumble his firearm, regained possession, and then faced the officers. Detective Fentz used his service weapon to shoot Serrano one time. The officers then recovered Serrano's firearm. Serrano was transported to Eskenazi Hospital, and the court issued an arrest warrant.

[4] The State charged[3] Serrano with Level 4 felony unlawful possession of a firearm by a serious violent felon[4] and alleged Serrano was a habitual offender.[5] On October 15, 2018, Serrano filed a motion to suppress arguing the traffic stop was unconstitutional. During the hearing on the motion to suppress, Serrano relied on the testimony of Officer Brandon and Officer Fentz to argue no evidence supported the white Cadillac's involvement in the alleged robbery. After the hearing, the trial court issued a written order denying the motion to suppress that stated, in part:

> The Court finds that due to the vehicle at issue being in the area of the armed robbery and that Officer Brandon testified that the vehicle

---

[3] The State also initially charged Serrano with Level 3 felony attempted armed robbery, Ind. Code § 35-42-5-1 & Ind. Code § 35-41-5-1; Level 6 felony criminal recklessness, Ind. Code § 35-42-2-2; and Level 5 felony being a felon in possession of a handgun, Ind. Code § 35-47-2-1. However, these charges were later dismissed without prejudice.

[4] Ind. Code § 35-47-4-5.

[5] Ind. Code § 35-50-2-8.

dispatch reported was involved in the armed robbery was a white Cadillac [E]scalade that law enforcement did not have to provide the Court with the speed limit of the area of the stop or the vehicle's exact speed. The key is that the vehicle was leaving the area at a rate of speed that Detective Fentz (an experienced officer) described at [sic] a high rate of speed.

(App. Vol. 2 at 103-04.)

On January 18, 2019, Serrano filed a supplemental motion to suppress. At a hearing on the supplemental motion, Serrano introduced into evidence bodycam footage from Officer Sears. This footage had not been entered into evidence during the first hearing on Serrano's motion to suppress. After that hearing, the trial court granted Serrano's motion to suppress without entering any specific findings. The State filed a motion to correct error. The trial court denied the State's motion, and the State appeals because the grant of the motion to suppress effectively precluded prosecution. *See* Ind. Code § 35-38-4-2(5) (defining circumstances under which State may appeal trial court decision).

## Discussion and Decision

The State has the burden of showing the trial court's ruling on the motion to suppress was contrary to law because the State is appealing from a negative judgment. *State v. Bouye*, 118 N.E.3d 22, 24 (Ind. Ct. App. 2019). We evaluate "whether the record contains substantial evidence of probative value that supports the trial court's decision." *State v. Lucas*, 112 N.E.3d 726, 729 (Ind. Ct. App. 2018). Our review of the denial of a motion to suppress is similar to our review of other sufficiency issues.

*Stark v. State*, 960 N.E.2d 887, 888 (Ind. Ct. App. 2012), *trans denied*. We do not reweigh the evidence and we consider conflicting evidence in favor of the trial court's ruling. *Id*. We will also consider uncontested evidence favorable to the defendant. *Id*. at 889. "We review de novo a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous." *Id*.

### *Reasonable Suspicion and the Traffic Stop*

[7] The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution generally prohibit warrantless seizures subject to a few well-delineated exceptions. *M.O. v. State*, 63 N.E.3d 329, 331-32 (Ind. 2016). The State has the burden of proving that one of the well-delineated exceptions applies. *Randall v. State*, 101 N.E.3d 831, 837 (Ind. Ct. App. 2018), *trans. denied*. Further, the Indiana Constitution requires any search or seizure be reasonable under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Evidence obtained pursuant to an unconstitutional search or seizure is subject to exclusion and may not be used as evidence against the defendant at trial. *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013). This exclusion extends to "evidence directly obtained by the illegal search or seizure as well as evidence derivatively gained as a result of information learned or leads obtained during that same search or seizure." *Id*.

[8] The State contends the traffic stop meets one of the exceptions to the Fourth Amendment's warrant requirement because it was an investigatory stop based on reasonable suspicion. Further, the State argues, the traffic stop satisfied the Indiana

Constitution because the police conduct was entirely reasonable. Serrano argues the officers violated both the Fourth Amendment and the Indiana Constitution by stopping the vehicle. However, we need not decide whether the traffic stop was constitutional because, regardless, Serrano's conduct after the stop was sufficiently distinguishable and attenuated from the stop to be purged of whatever taint may have accompanied the seizure of the Cadillac.

### *Attenuation and Serrano's Conduct After the Traffic Stop*

[9] Under the United States Constitution, evidence obtained in violation of the Fourth Amendment may still be used against a criminal defendant if it falls within certain recognized exceptions to the exclusionary rule. *C.P. v. State*, 39 N.E.3d 1174, 1180 (Ind. Ct. App. 2013). For example, the Supreme Court of the United States has recognized exceptions if the officers rely in good faith on a subsequently invalidated warrant, if the causal connection between the constitutional violation and the evidence is remote, if the evidence would have inevitably been discovered without the constitutional violation, or if a lawful, genuinely independent seizure would have yielded the same evidence. *Id*. (citing *United States v. Leon*, 468 U.S. 897 (1984), *reh'g denied*; *Hudson v. Michigan*, 547 U.S. 586 (2006); *Nix v. Williams*, 467 U.S. 431 (1984); and *Murray v. United States*, 487 U.S. 533 (1988)). One such exception is the new-crime exception. *Id*. at 1182 (holding defendant who battered police officer committed new and distinct crime after being illegally seized such that evidence of the battery was properly admitted). The new-crime exception is a subset of the attenuation doctrine. *Wright v. State*, 108 N.E.3d 307, 314 (Ind. 2018).

[10]    The attenuation doctrine[6] provides that, for Fourth Amendment purposes, the collection of evidence may be so far removed from an illegal search or seizure that the evidence is untainted. *Wright*, 108 N.E.3d at 317. Therefore, courts may admit evidence that derives from an illegal search or seizure if the evidence itself or the circumstances in which the evidence was discovered are sufficiently distinguishable from the illegal search or seizure. *Id*. at 321. Courts assess the following factors to determine whether the taint from an illegal search or seizure has been purged: the temporal proximity between the unconstitutional conduct and the discovery of the evidence, the presence of intervening circumstances, and the flagrancy of police misconduct. *Utah v. Strieff*, 136 S. Ct. 2056, 2062 (2016); *see also Wright*, 108 N.E.3d at 319-20 (considering the timeline, intervening circumstances, and degree of police misconduct when determining whether defendant's statements were sufficiently attenuated from illegal search and seizure to be admissible).

---

[6] As an initial matter, Serrano argues the State waived its arguments regarding the attenuation doctrine because, at the hearing on Serrano's supplemental motion to suppress, the State argued only that the stop of the Cadillac was supported by reasonable suspicion. In support, Serrano cites *State v. Friedel*, 714 N.E.2d 1231, 1236 (Ind. Ct. App. 1999), which held the State waived its argument regarding standing by not raising it before the trial court. However, in *Armour v. State*, the State charged Armour with possession of cocaine after officers found drugs in a friend's hotel room, and Armour filed a motion to suppress. 762 N.E.2d 208, 213 (Ind. Ct. App. 2002), *trans. denied*. The State did not raise the issue of standing, but the trial court addressed it sua sponte in denying the defendant's motion to suppress. *Id*. We held that even though the State did not raise the issue of standing at the trial level, the State had not waived its argument regarding standing because the issue was fully litigated at the trial court level. *Id. See also State v. Miracle*, 75 N.E.3d 1106, 1109 (Ind. Ct. App. 2017) (reversing denial of motion to correct error when Indiana Bureau of Motor Vehicles intervened and filed motion to correct error after trial court issued order expunging driver's administrative suspensions).

In the case at bar, the new crime exception was raised before the trial court. In its Motion to Correct Error, the State observed "the exclusionary rule does not prohibit evidence of illegal activity occurring after an illegal stop provided the activity is attenuated from the stop." (App. Vol. II at 132.) The State argued Serrano's conduct after exiting the vehicle was sufficiently attenuated to be admissible. Consequently, like the standing argument in *Armour*, the new crime exception argument was raised and fully litigated before the trial court. The trial court rejected the argument and denied the State's Motion to Correct Error. We therefore hold the argument was not waived.

[11]     Even though the Fourth Amendment recognizes the new-crime exception, that is not the end of our analysis because "[i]t is well settled that a state may provide greater protection from searches and seizures than the Fourth Amendment requires." *State v. Brown*, 840 N.E.2d 411, 417 (Ind. Ct. App. 2006). When assessing whether Indiana law allows for a new-crime exception to the exclusionary rule, we observed the exclusion of evidence of a new crime committed after an illegal search or seizure does not advance the deterrence of police misconduct that typically justifies application of the exclusionary rule. *C.P.*, 39 N.E.3d at 1182. Therefore, Indiana law recognizes a new-crime exception to the exclusionary rule, which "provides that notwithstanding a strong causal connection in fact between an illegal search or seizure by law enforcement and a defendant's response, if the defendant's response is itself a new and distinct crime, then evidence of the new crime is admissible notwithstanding the prior illegality" of police behavior. *Id.* at 1182. If the new-crime exception did not apply, then a person could engage in all sorts of criminal conduct after an illegal seizure (such as, shooting or assaulting an officer, threatening an officer, etc.) without fear of reprisal. *Id.* at 1183-84.

[12]     The State argues evidence of Serrano's conduct after the stop and the gun recovered from Serrano should be admissible because Serrano's conduct is both attenuated from the stop and evidence of a new crime. The State characterizes Serrano's act of exiting the backseat, pushing past two officers, and running across the street as "an extreme and unexpected intervening event." (Appellant's Br. at 18.) In contrast, Serrano argues the gun should be suppressed because it is derivative of the traffic stop. The officers stopped the Cadillac because of Officer Sears' radio report. When

Detective Fentz approached the Cadillac, his intention was to have the driver and the individuals in the back seat exit the vehicle and show him their hands. The officers did not expect Serrano to push them, run from them, and draw a gun. Serrano's decision to do all these things after the stop constitutes evidence of a new crime that is separate and distinguishable from whatever taint accompanies the stop of the Cadillac. Consequently, we hold that the new crime exception to the exclusionary rule applies in this situation and Serrano's motion to suppress should be denied. *See K.C. v. State*, 84 N.E.3d 646, 651 (Ind. Ct. App. 2017) (holding juveniles' actions of hitting an officer after officer attempted to conduct pat-down search constituted new and distinct crimes such that evidence of those crimes was admissible pursuant to the new crime exception to the exclusionary rule), *trans. denied*.

# Conclusion

[13] We need not decide whether the officers had reasonable suspicion to stop the Cadillac. After the stop, Serrano did not comply with the officer's orders or stay near the vehicle. Instead, he pushed past two officers, ran from them, and fumbled with a handgun. This conduct and the discovery of Serrano's gun constitute a new crime, and therefore, the new crime exception to the exclusionary rule applies. We reverse the trial court's grant of Serrano's supplemental motion to suppress and remand for further proceedings.

[14] Reversed and remanded.

Mathias, J., and Crone, J., concur.